C & J INDUSTRIES, INC., a Utah corporation, A. Robert Collins and Glade N. James, Plaintiffs and Appellants,

v.

Edward O. BAILEY and Ruth C. Bailey, his wife, Defendants and Respondents.

No. 18327.

Supreme Court of Utah.

Aug. 19, 1983.

Kay M. Lewis, Salt Lake City, for plaintiffs and appellants.

T. Quentin Cannon, Salt Lake City, for defendants and respondents.

HOWE, Justice:

This case is before us for the second time. Plaintiffs brought suit under U.C.A., 1953, § 78–33–1, seeking a declaratory judgment that they had not actuated paragraph 3(a) of a Uniform Real Estate Contract (Bailey contract) dated April 13, 1978, under which defendants Bailey sold to plaintiff C & J Industries, Inc. (C & J) eleven lots situated in Salt Lake County, Utah for a total purchase price of $220,000, payable in monthly installments. Paragraph 3(a) of the Bailey contract provides:

> In the event Buyer desires to sell or assign, transfer or convey Buyer's rights under this contract or Buyer's interest in said premises then and in that event the Buyer must pay in full the outstanding balance due on this contract prior to said transaction.

On even date therewith, plaintiffs Collins and James executed a "guaranty" personally binding themselves, jointly, "to guaranty the performance of said corporation [C & J] in each and every covenant and agreement under said contract, and Seller does not and will not look to the performance of said contract solely by Buyer ..."

The following year, on March 9, 1979, Collins and James, as sellers, entered into a Uniform Real Estate Contract (Burgie contract) with one Jay L. Burgie, for the sale to him of three of the lots purchased by C & J under the Bailey contract. The Burgie contract contains a clause by which it is understood "that there presently exist obligations against this and other property

which Seller (Collins and James) agrees to pay." An addendum to the Burgie contract, contemporaneously executed, states that "[b]oth Seller and Buyer specifically understand that there is presently an outstanding Real Estate Contract in favor of Edward O. Bailey and Ruth C. Bailey, his wife, as Sellers, and C & J Industries, Inc., as Buyer." Jay L. Burgie in that addendum agrees "to abide by the terms set forth in said [Bailey] contract dated April 13, 1978, so far as said contract relates to the said Baileys."

On April 4, 1979, defendants invoked the requirements of paragraph 3(a) of the Bailey Contract and demanded payment in full under that provision. After plaintiffs initiated this action, the district court found that paragraph 3(a) had not been actuated and granted plaintiffs' motion for summary judgment. On appeal, this Court reversed and remanded the case for a determination of "whether, in acting as Sellers under the second contract, Collins and James were acting for C & J. If it is determined that they were, then judgment should be entered for defendants (Baileys). If the opposite is determined, judgment should be entered for the plaintiffs." *C & J Industries, Inc. v. Bailey,* Utah, 618 P.2d 58, 60 (1980).

Following its remand to the district court, the case went to trial on that issue and the court found that "A. Robert Collins and Glade N. James were in fact Buyers under the first contract, or in the alternative, were acting as agents for C & J Industries in the second contract."

▮ The express ruling by this Court on all issues raised by prior appeal becomes the law of the case and is binding upon the parties, the trial court and this Court. *Prudential Federal Savings & Loan Ass'n. v. St. Paul Ins. Cos.,* 22 Utah 2d 70, 448 P.2d 724 (1968); *Davis v. Payne & Day, Inc.,* 12 Utah 2d 107, 363 P.2d 498 (1961).

Collins and James testified that before the Bailey contract was entered into, on the advice of their attorney they formed a corporation (C & J), the stock in which was wholly owned by them. When their accountant suggested that the advantages of conducting business as a corporation were minimal, they again consulted their attorney and were told that it would be easiest to simply forfeit the corporate charter by failing to file an annual report and by not paying corporate taxes. The state sent a notice of suspension to C & J on March 31, 1980 and it was involuntarily dissolved on March 31, 1981. Contrary to the assumption of Collins and James that the corporation was defunct when they signed the Burgie contract in their individual capacities, until the actual date of dissolution C & J was a corporation whose existence could not be challenged by anyone other than the sovereign who created it. U.C.A., 1953, § 16–10–51.

As earlier noted, the trial court found as a fact that Collins and James were acting as agents for C & J in executing the Burgie contract. The plaintiffs assail that finding on the ground that there is no competent evidence to support it. Our review of the record, however, is to the contrary. Collins and James intended to sell the interest of C & J. They were laboring under a mistaken belief that the corporation had been dissolved and had ceased to exist. They did not sell to Burgie in the name of the corporation, but it was the corporation's interest they intended to sell because they individually had none. Collins testified "We were the corporation, there was nothing else there. We were it, as I recall, and when the corporation no longer existed, we were the only ones there to make that—."

▮ It is significant that neither Collins nor James claimed that they as individuals had an interest in the property separate and apart from the interest of the corporation. They had no conveyance from the corporation, had no contract to acquire the corporation's interest in the property, nor did they express any intention of ever acquiring individually any interest in the property which they could have resold to Burgie. While we recognize that a person may enter into a contract to sell property that he does not yet own nor even has an interest in, that is not the usual case and such intention was not claimed by either Collins or James.

We are unwilling to ascribe to them the intention of selling to Burgie property that they did not own and in which they had no legal or equitable interest. We are left then with the conclusion that Collins and James intended to sell to Burgie the corporation's interest in the property and would have made the Burgie contract in the name of the corporation as seller had it not been for their mistaken belief as to the dissolution of the corporation.

We therefore hold that there was competent evidence from which the trial court could have found and from which it could have drawn reasonable inferences that Collins and James executed the Burgie contract on behalf of the corporation. That being so, it is unnecessary for us to examine the other ground upon which the trial court found in favor of the defendants.

The judgment below is affirmed. Costs are awarded to respondents.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.