1999 UT App 139

**Steve SCOTT, Plaintiff and Appellee,**

v.

**Linda MAJORS, Defendant
and Appellant.**

No. 980142–CA.

Court of Appeals of Utah.

April 29, 1999.

Shawn D. Turner, Larson Kirkham & Turner, Salt Lake City, for Appellant.

Mary Ann Hansen, Orem, for Appellee.

Before WILKINS, P.J., and DAVIS and JACKSON, JJ.

## OPINION

WILKINS, Presiding Judge:

¶1 Linda Majors appeals the trial court's grant of summary judgment awarding ownership of real property along with attorney fees, costs and damages to Steve Scott. We affirm.

## BACKGROUND

¶2 This case is before us a second time, see Scott v. Majors, No. 960536, slip op. (Utah Ct.App. April 10, 1997), and arises out of a real estate purchase contract (REPC) entered into in December 1994 between Linda Majors as seller and Steve Scott as successor buyer, for the sale of a condominium located in Park City, Utah. In February 1995, Scott brought suit seeking specific performance requiring Majors to comply with the contract and sell him the Park City property. Scott filed a motion for summary judgment. In January 1996, the trial court ruled that a valid contract existed and ordered specific performance, requiring Majors to convey the property to Scott under the terms of the REPC. In its order, the court deferred ruling on attorney fees, costs and damages. Majors appealed. We affirmed the trial court's decision in April 1997.

¶3 Thereafter, as part of an attempt to negotiate attorney fees, costs and damages, Scott asked Majors to sign a mutual release agreement he had prepared. This proposal required both parties to comply with the REPC pursuant to court order, discharged

both parties from all other claims arising out of the REPC, and provided $5,000 to Scott as payment-in-full for costs, damages and attorney fees under the REPC. The amount was to be deducted from the sale proceeds. Majors did not agree and refused to sign the proposed mutual release document.

¶ 4 On July 2, 1997, as a result of the parties' failed negotiations, Scott filed a second motion for summary judgment seeking to establish the amount of costs, damages and attorney fees to which he was entitled from the original lawsuit. Eight days later, however, Majors filed for bankruptcy protection under Chapter 7 of Title 11, U.S.C. Scott was listed as a secured creditor. On October 31, 1997, Majors was discharged by order of the United States Bankruptcy Court, Central District of California. Scott then filed an amended motion for summary judgment again requesting costs, damages and attorney fees arising out of the state court action. On November 25, 1997, the bankruptcy court abandoned any claim of the bankruptcy trustee to the Park City property, in accordance with 11 U.S.C. § 554(c) (1993).[1] Title automatically reverted to Majors subject to Scott's existing judgment of specific performance. Scott filed a second motion in state court, seeking an order establishing terms and conditions of conveying the realty, in an effort to enforce his prior judgment against Majors and the property.

¶ 5 The trial court granted both motions. First, the trial court granted Scott's motion for summary judgment, ruling that under 11 U.S.C. § 553 (1993) and the equitable doctrine of recoupment, Scott could offset the contract sales price of $37,500 against his

costs, damages and attorney fees of $35,563.24. Consequently, the trial court determined that Scott owed Majors $1,936.76 at closing. Second, the court ordered Majors to convey the property to Scott subject to the offset mentioned above. The court further ordered that if Majors refused to comply with the order, then Associated Title Company was directed, under Rule 70 of the Utah Rules of Civil Procedure, to effectuate the closing.[2]

¶ 6 Majors refused to comply with the trial court's order to convey the property, and instead filed a lis pendens. Because of the lis pendens, Associated Title declined to convey the property or issue title insurance. Therefore, pursuant to Rule 70, the trial court vested title to the property in Scott. The court also ordered partial disbursement of Major's remaining proceeds to pay the accrued but unpaid property taxes and court costs, and most of the remainder to Scott for additional attorney fees and costs. Majors ultimately received $28.80, and again appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 On appeal, Majors argues that the trial court committed reversible error by (1) considering Scott's motions for summary judgment without the required notice to submit for decision contemplated by Rule 4–501 of the Utah Code of Judicial Administration; (2) awarding ownership of the condominium to Scott; (3) allowing Scott to offset the contract purchase price against his costs, attorney fees and damages; and (4) determining that summary judgment was proper as to damages, costs and attorney fees.

1. Title 11 U.S.C. § 554(c) provides:
   Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
   11 U.S.C. § 554(c) (1993).

2. Rule 70 provides, in relevant part:
   If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by

some other person appointed by the court and the act when so done has like effect as if done by the party. On application of the party entitled to performance and upon order of the court, the clerk shall issue a writ of attachment or sequestration against the property of the disobedient party to compel obedience to the judgment.... If real or personal property is within the state, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law.
Utah R. Civ. P. 70.

¶ 8 Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c); *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993). We give the trial court's legal conclusions no deference and review them for correctness. *See Plateau Mining Co. v. Utah Div. of State Lands & Forestry*, 802 P.2d 720, 725 (Utah 1990). Moreover, we review the facts and all reasonable inferences arising from them in the light most favorable to the losing party, *see Higgins*, 855 P.2d at 233, in this case, Majors.

## ANALYSIS

### A. *Rule 4–501 Certification*

¶ 9 Majors argues the trial court erred in considering Scott's motions because Scott did not comply with Utah Code of Judicial Administration Rule 4–501(1)(D). Majors asserts that under the plain language of that rule the court should not have ruled on these motions at all, and the matter should be remanded. "A trial court's interpretation of a rule in the Utah Code of Judicial Administration presents a question of law reviewed for correctness." *Hartford Leasing Corp. v. State*, 888 P.2d 694, 697 (Utah Ct.App.1994). When we interpret a rule, we analyze the rule's " ' "plain language and resort to other methods ... only if the language is ambiguous." ' " *Id.* at 701 (quoting *Stucker v. Summit County*, 870 P.2d 283, 287 (Utah Ct.App.1994) )(additional quotations omitted).

¶ 10 Rule 4–501(1)(d) provides:

*Notice to Submit for Decision.* Upon the expiration of the five-day period to file a reply memorandum, either party *may* notify the Clerk to submit the matter to the court for decision. The notification shall be in the form of a separate written pleading and captioned "Notice to Submit for Decision." The notification shall contain a certificate of mailing to all parties. *If neither party files a notice, the motion will not be submitted for decision.*

Utah Code of Judicial Admin. R. 4–501(1)(d) (emphasis added).

¶ 11 Majors reads the last sentence of this rule to preclude the trial court from ruling on a matter that is not properly the subject of a "Notice to Submit for Decision." We disagree. While a court may refrain from addressing a matter that is not submitted for decision under Rule 4–501(1)(d), *see Golding v. Ashley Central Irrigation Co.*, 902 P.2d 142, 148 (Utah 1995) (affirming court's refusal to address issue not submitted for decision under Rule 4–501(1)(d)), nothing in this rule or any other rule bars a court from deciding such a matter sua sponte. A correct reading of the unambiguous language of the last sentence of the rule is that the parties may not assume that a matter will be presented to the judge for decision by the clerks' office unless a party notifies the clerk of the court that the matter is fully briefed (or at least all parties have had ample opportunity to brief their arguments) and ready for decision.

¶ 12 The purpose of the Code of Judicial Administration is to bring order to the manner in which the courts operate. They are not intended to, nor do they, create or modify substantive rights of litigants, nor do they decrease the inherent power of the court to control matters pending before it. *Cf. Hartford Leasing Corp.*, 888 P.2d at 702 (" '[a] trial judge is accorded broad discretion in determining how a [case] shall proceed in his or her courtroom.' " (quotation omitted)). Once a motion is properly made, and other parties to the litigation have had the opportunity provided by the Rules of Civil Procedure to respond, the court may act at its convenience to decide the matter. No notice to submit for decision under Rule 4–501 is required. Accordingly, under the plain language of Rule 4–501, we conclude that the trial court correctly determined that it could rule on the pending motions.

### B. *Ownership of the Property*

¶ 13 Majors also argues that the trial court erroneously awarded ownership of the property to Scott because Majors was not under any legal obligation to sell after Scott failed to purchase the property under the terms of the REPC. Essentially, Majors contends that Scott repudiated the contract by insisting he would close only if Majors consented to the terms of the mutual release agreement,

which she claims would have constituted a modification of the contract.[3]

■ ¶ 14 In our April 10, 1997 Memorandum Decision we affirmed the trial court's initial grant of summary judgment, holding that a valid contract existed between Majors and Scott, and affirming the judgment of specific performance against Majors. That decision became the law of the case, and we will not now rule otherwise. *See C & J Indus. v. Bailey*, 669 P.2d 855, 856 (Utah 1983) (stating "[t]he express ruling by this Court on all issues raised by prior appeal becomes the law of the case and is binding upon the parties, the trial court and this Court"). With that in mind, we address the effect of Scott's proposed mutual release agreement on Majors' obligations under the purchase agreement, because the release negotiation arose after our prior decision.

¶ 15 It is a basic contract principle that "where one party to a contract repudiates it or refuses to perform it, the other party is not obligated to perform his [or her] promise, and such non-performance does not render the other party liable in damages." 17A Am.Jur.2d *Contracts* § 704 (1991) (footnote omitted).

> [T]o constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not ... perform.... However, language that under a fair reading 'amounts to a statement of intention not to perform *except on conditions which go beyond the contract*' constitutes a repudiation.

Restatement (Second) of Contracts § 250 cmt. b (1981) (emphasis added). Moreover, "where a party wrongfully states that he will not perform at all *unless the other party consents to a modification* of ... [the contract], the statement is a repudiation ... because the breach that he threatens ... is a complete refusal of performance." *Id.* § 250 cmt. d (emphasis added).

¶ 16 However, it is also well-settled that

no abrogation, change, modification, or substitution in a primary contract can be effectuated by the sole action of one of the parties to it. *The consent of both is required to cancel, alter, or supplant a contract fairly made.* The same meeting of the minds is needed that was necessary to make the contract in the first place.... *The original contract generally remains in force except as modified or superseded by the new agreement.*

17A Am Jur.2d *Contracts* § 513 (1991) (emphasis added).

■ ¶ 17 In her brief, Majors argues that Scott conditioned his performance of the REPC on Majors' consent to the proposed mutual release agreement, thus repudiating the contract. However, we find no verified statement in the record, nor has Majors directed our attention to any, contrary to Scott's sworn statement that the proposed mutual release was just that, "proposed," and that Scott was ready, willing and able to close strictly under the then-existing terms of the purchase agreement. Majors failed to file counter affidavits or other evidentiary materials on this issue as required by Rule 56(e). As such, we view the facts as presented by Scott as uncontested. *See Franklin Fin. v. New Empire Dev. Co.*, 659 P.2d 1040, 1044 (Utah 1983) (accepting facts as undisputed when party opposing summary judgment failed to file responsive affidavit or other evidentiary materials allowed by Rule 56(e)); *see also* Utah R. Civ. P. 56(e).

■ ¶ 18 Under any interpretation of these facts, Scott did not repudiate the contract but merely tried to resolve unresolved issues thereunder. We hold that Scott's proposal was an offer to modify the original contract which Majors rejected, leaving the original contract in full force. Majors was not released from her contractual obligation to close. Consequently, based on Majors's failure to close, we affirm the trial court's order vesting title to the property in Scott.

---

3. The terms of the proposed mutual release agreement required, among other things, that Majors escrow the proceeds from the sale to pay Scott's attorney fees and damages (to setoff his

claims against Majors from the original action) *and* Majors consent to a mutual release of claims.

### C. *Setoff under 11 U.S.C. § 553*

¶ 19 Having determined that Scott was properly vested with title to the property, we now examine whether the trial court correctly permitted him to offset the contract purchase price owed Majors against his claims for costs, attorney fees, and damages incurred in pursuing this action. Ordinarily, claims against an individual who files for protection under Chapter 7 of the United States Bankruptcy Code, and who is thereafter discharged, cannot later be pursued. Here, however, the state trial court found that a setoff in favor of Scott was allowed by the Bankruptcy Code, under 11 U.S.C. § 553.[4] Majors, on the other hand, argues that Scott's claims for costs, attorney fees and damages are barred by section 553 because: (1) part of the debt Scott seeks to setoff was incurred within ninety days before Majors filed her bankruptcy petition; (2) part of the attorney fees were incurred during the automatic stay imposed by the Bankruptcy petition; and (3) setoff is not allowable under the circumstances of this case.

¶ 20 "Title 11 U.S.C. § 524 bars the post-discharge collection of [a] discharged debt." *Wiegand v. Tahquamenon Area Credit Union (In re Wiegand),* 199 B.R. 639, 641 (W.D.Mich.1996). This section provides, in relevant part:

(a) A discharge in a case under this title .... (2) operates as an injunction against the commencement or continuation of an action, the employment process, or an act, to collect, recover or *offset* any such debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived....

11 U.S.C. § 524(a)(2) (1993) (emphasis added). However, 11 U.S.C. § 553(a) (1993) "preserves for the creditor the right to setoff after discharge." *Wiegand,* 199 B.R. at 641. Section 553(a) provides, in relevant part, that

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, *this title does not affect any right of a creditor to offset a mutual debt* owing by such creditor to the debtor that arose be-

fore the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553(a) (1993) (emphasis added).

¶ 21 To exercise a right of setoff under Section 553, a creditor (in this case, Scott) must show each of the following elements: (1) that the creditor owes a "debt" to the debtor, in this case Majors, that arose before the bankruptcy case began; (2) that the creditor holds a "claim" against the debtor that arose before the bankruptcy case; and (3) that the debt and claim are mutual and valid obligations, that is, something must be owed by each side. *See* 11 U.S.C. § 553(a); *Davidovich v. Welton (In re Davidovich),* 901 F.2d 1533, 1536 (10th Cir.1990); *In re IML Freight, Inc.,* 65 B.R. 788, 793 (Bankr.D.Utah 1986); *see generally* 9B Am. Jur.2d *Bankruptcy* § 2332 (1991); 5 *Collier on Bankruptcy,* 553.01[1], at 553–7 to 553–8 (Lawrence P. King ed., 15th ed.1998).

¶ 22 Scott's "debt" to Majors is his obligation to pay the contract price for purchase of the condominium. It arose in December 1994, well before the filing of the bankruptcy petition. *See United States v. Gerth,* 991 F.2d 1428, 1434 (8th Cir.1993) (holding in contract claim, party's right to payment originated when contract was signed). Moreover, the "debt" and "claim" are mutual obligations because each party owes monetary obligations to each other: Scott owes Majors the purchase price, and Majors owes Scott the amount of the attorney fees, costs and damages awarded by the trial court. More difficult, however, is the question of whether Scott's claim against Majors arose before the bankruptcy action—that is, whether the attorney fees, damages and costs amount to a pre- or post-petition claim.

¶ 23 Fortunately, there is a significant amount of legal authority discussing when a claim or debt arises for purposes of a section 553 setoff analysis. "In general, a claim is considered to have arisen before the commencement of the [bankruptcy] case if all of

---

4. The court also found that Scott could recover his attorney fees, costs and damages under the doctrine of recoupment. Because we hold that

the trial court did not err in applying section 553, as described in the text, we need not, and do not address the doctrine of recoupment.

the elements of liability arose before the [bankruptcy] petition date." *Collier on Bankruptcy,* 553.03[1][b], at 553–14; *see Rozel Indus., Inc. v. Internal Revenue Service (In re Rozel Indus.),* 120 B.R. 944, 949 (Bankr.N.D.Ill.1990) (holding debt must be "absolutely owing" at time of filing of petition to be pre-petition item; however, the amount of liability need not be specifically known or currently due, only that some definite liability has accrued); *see also Gerth,* 991 F.2d at 1433 (stating for obligation to arise pre-petition, debt must be "absolutely owed"); *Edge v. Roach (In re Edge),* 60 B.R. 690, 694 (Bankr.M.D.Tenn.1986) (holding claim for negligent treatment arose at time of misconduct). In other words, a debt arises when "all transactions necessary for liability occur, regardless of whether the claim was contingent, unliquidated or unmatured when the petition was filed." *Gerth,* 991 F.2d at 1433; *see also In re Bennett,* 17 B.R. 819, 820 (Bankr.D.N.M.1982) (stating "a 'claim' is a right to payment, whether or not such a right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured"); *Collier on Bankruptcy,* 553.03[1] to [2], at 553–13 to 553–26 (defining contingent, unliquidated and unmatured claim).

¶ 24 Here, all the attorney fees, costs and damages due to Scott are pre-petition claims because Majors's original breach of the REPC occurred before the bankruptcy petition was filed. That breach made her absolutely liable for the fees, costs and damages arising from that breach. It is irrelevant that when Majors filed her petition for bankruptcy the total amount of the claim was unknown. *See Collier on Bankruptcy,* 553.03[1][f], at 553–18 (providing "a right to setoff is preserved under section 553 even though the claim remains unliquidated"). What is relevant is that the events triggering Majors's liability to Scott occurred before the filing of the petition. With that, we conclude that all three conditions necessary for setoff under section 553(a) were properly met.

### (1) 11 U.S.C. § 553(a)(3)

■ ¶ 25 Having decided that setoff was otherwise authorized under section 553(a), we now address Majors's argument that the court erred in setting-off the debt because part of the debt to be offset fell within the exception of the Code's setoff provisions—that of being incurred by the creditor (Scott) within ninety days of the filing of the bankruptcy petition. *See* 11 U.S.C. § 553(a)(3). Under section 553(a), a setoff is not permitted if *"the debt owed to the debtor by such creditor* was incurred by such creditor—(A) after 90 days before the date of the filing of the petition; (B) while the debtor was insolvent; and (C) for the purpose of obtaining a right of setoff against the debtor."* 11 U.S.C. § 553(a)(3) (emphasis added); *see Collier on Bankruptcy,* 553.01[3], at 553–8 (interpreting § 553(a)(3) as "bar[ring] setoff if the creditor became indebted to debtor for the purpose of obtaining a right of setoff and the debt was incurred within 90 days before the commencement of the debtor's bankruptcy case while the debtor was insolvent").

¶ 26 Here, Majors filed her petition for bankruptcy on July 10, 1997. She is the debtor, yet she argues that the claimed setoff is erroneous because section 553(a)(3) precludes setoff of any debt incurred by Scott as creditor against her as debtor from April 10, 1997, to July 10, 1997. Scott's only debt to Majors is the purchase price owed for the condominium which was incurred in December 1994, more than two years before the bankruptcy petition was filed and well outside the ninety day pre-petition period. As such, the exception against setoff under 11 U.S.C. § 553(a)(3) does not apply here. *See Collier on Bankruptcy,* 553.03[5], at 553–53 (stating section 553(a)(3) was intended to prevent creditors from engineering rights of setoff that are abusive and unfair).

### (2) Effect of Automatic Stay on Setoff

■ ¶ 27 Majors also argues that Scott cannot setoff the $2,000 he paid to a California bankruptcy attorney, under section 553(a), because it was an obligation that Scott incurred during the period of the automatic stay mandated by the Bankruptcy Act. *See In re Appel,* 166 B.R. 624, 625 (Bankr. S.D.Tex.1994) (holding Code does not affect the right of setoff of mutual debts arising

before the bankruptcy is filed, except for the operation of the automatic stay). Again, we disagree. Because the genesis of Majors's obligation to pay Scott's attorney fees is pre-petition, when the breach of contract occurred, it is irrelevant that the fees were actually incurred after the filing of the petition during the automatic stay. *See Stewart Foods, Inc. v. Broecker (In re Stewart Foods)*, 64 F.3d 141, 146 (4th Cir.1995) (stating conclusion that payments are pre-petition obligations is not altered when payments become due after the bankruptcy filing) and (holding "claim is not rendered a post-petition claim simply by the fact that time for payment is triggered by an event that happens after the filing of the petition" (citations omitted)); *Gerth*, 991 F.2d at 1433 ("dependency on a postpetition event does not prevent a debt from arising prepetition"). Therefore, we also reject this argument.

### (3) Effect of Discharge on Setoff

¶ 28 Majors alternatively argues that even assuming Scott's claim meets the conditions for setoff under section 553(a), Scott's claim for attorney fees, costs and damages must be "disallowed" under section 553(a)(1). *See* 11 U.S.C. § 553(a)(1) (providing that setoff is not allowed if claim of creditor against debtor is "disallowed"). Relying on *Johnson v. Rutherford Hosp. (In re Johnson)*, 13 B.R. 185 (Bankr.M.D.Tenn.1981), which interprets code sections 553(a) and 524(a), Majors argues that because Scott's claim for attorney fees, costs and damages is a claim made against her personally, rather than the bankruptcy estate, setoff is improper in this case. In other words, she argues that setoff would only be permissible against the bankruptcy estate after discharge of the debt.

¶ 29 Here, the attorney fees, costs and damages claimed by Scott are pre-petition obligations against Majors that would otherwise be discharged by the bankruptcy. Thus, we consider, for the first time in this state, whether the setoff allowed under 11 U.S.C. § 553 may be properly applied against a bankrupt's discharged debt, and if

so, whether offset is only allowed against the bankruptcy estate, as Majors argues.

¶ 30 A majority of courts, including the United States Court of Appeals for the Tenth Circuit, have held that section 553 takes precedence over section 524(a)(2), the general discharge provision, despite section 524's explicit prohibition against the recovery of setoffs. The majority view is that a creditor's right to a setoff survives the bankruptcy court's final discharge of the debtor, provided the right to a setoff existed when the bankruptcy petition was filed. *See Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1538–39 (10th Cir.1990); *Reich v. Davidson Lumber Sales, Inc.*, 154 B.R. 324, 334 (D.Utah 1993) *rev'd on other grounds sub nom. Reich v. Stangl*, 73 F.3d 1027 (10th Cir.1996); *see also Corolco Television Inc. v. National Broadcasting Co. (In re De Laurentiis Entertainment Group)*, 963 F.2d 1269, 1275–76 (9th Cir.1992); *Buckenmaier v. Buckenmaier (In re Buckenmaier)*, 127 B.R. 233, 236–37 (Bankr.9th Cir.1991); *Wiegand v. Tahquamenon Area Credit Union (In re Wiegand)*, 199 B.R. 639, 641 (W.D.Mich.1996); *In re Morgan*, 77 B.R. 81, 84–85 (Bankr.S.D.Miss.1987); *In re Conti*, 50 B.R. 142, 149 (Bankr.E.D.Va.1985); *Ford v. Darracott (In re Ford)*, 35 B.R. 277, 279–80 (Bankr.N.D.Ga.1983); *Slaw Constr. Corp. v. Hughes Foulkrod Constr. Co. (In re Slaw)*, 17 B.R. 744, 747–48 (Bankr.E.D.Pa.1982); *Krajci v. Mt. Vernon Consumer Discount Co.*, 16 B.R. 464, 466 (E.D.Pa.1981). A minority of courts have reached the opposite result, prohibiting the use of a discharged debt as a setoff. *See In re Dezarn*, 96 B.R. 93, 94–95 (Bankr.E.D.Ky.1988) (barring creditor from offsetting debt since debt no longer exists after discharge); *cf. In re Johnson*, 13 B.R. at 188–89 (holding section 524(a)(2) precludes setoff of a discharged debt against a post-petition judgment in favor of debtor, as opposed to bankruptcy estate).

¶ 31 Majors does not urge us to adopt the position that discharge *always* bars offsetting a pre-petition claim, as the court in *Dezarn* holds. Rather, she relies on *Johnson*[5] and *Davidovich* in contending that set-

---

**5.** We reject Majors's interpretation of *Johnson*. That is, we do not construe *Johnson* as standing

for the proposition that a setoff of a discharged debt applies only against the estate of the debtor.

222

off of a discharged debt applies only against a claim made against the *estate* of the debtor (and thus applies only against the trustee), and is not permitted if the setoff is made against the debtor personally or against assets of the debtor which exist after the bankruptcy.

¶ 32 We adopt the majority position, upholding a creditor's right to offset a discharged debt under section 553, notwithstanding the contrary mandate of section 524(a)(2). We do so for several reasons. First, the plain language of section 553 states that the right to a setoff is preserved *notwithstanding any other section of the Bankruptcy Code*, except for certain specific limited exceptions which are not applicable here. *See* 11 U.S.C. § 553(a) (providing "this title does not affect any right of a creditor to offset"); *see, e.g., Slaw*, 17 B.R. at 748; *Ford*, 35 B.R. at 280. Second, the primacy of setoffs is essential to the equitable treatment of creditors. That is, it would be unfair to deny a creditor the right to recover a debt from a debtor while at the same time requiring the creditor to fully satisfy a debt to the debtor. *See Davidovich*, 901 F.2d at 1539; *accord Wiegand*, 199 B.R. at 641–42. Third, the primary purpose of discharge in bankruptcy—to prohibit post-bankruptcy debt *collection*—is not disserved by allowing an *offset* against a discharged debt because there is no collection, but merely an offset of a preexisting obligation. In other words, there is no net change in the status of the discharged debtor since the amount of the setoff is limited by the amount owed by the debtor. *See Wiegand*, 199 B.R. at 642. To do otherwise would produce an unwarranted windfall for the discharged debtor. Therefore, because we conclude that Majors's bankruptcy discharge did not preclude Scott from offsetting his claim against his obligation to Majors, and also hold that a valid right to setoff

existed at the time the bankruptcy petition was filed, we affirm the trial court's order allowing the setoff.

### D. *Award of Damages, Costs, and Attorney Fees*

¶ 33 Finally, Majors argues that the trial court erroneously granted summary judgment on Scott's claim to damages, costs and attorney fees. First, Majors contends that a portion of the attorney fees—those incurred in the California bankruptcy proceeding—are not within the scope of the attorney fees provision in the REPC and thus are nonrecoverable and excessive. She asserts that the attorney fees incurred from the bankruptcy action are non-recoverable because they do not directly relate to "enforcing the contract." We disagree.

¶ 34 In Utah, "where a contract provides for attorney fees, they are awardable only on the terms and to the extent authorized in the contract." *Carr v. Enoch Smith Co.*, 781 P.2d 1292, 1296 (Utah Ct.App.1989). Here, the REPC provided that "[i]n any action arising out of this contract, the prevailing party shall be entitled to costs and reasonable attorney fees." We hold that this language includes actions taken by Scott in the bankruptcy court to preserve his rights under the specific performance judgment in Utah. In the bankruptcy action, Scott's attorney convinced the bankruptcy trustee to abandon the property pursuant to 11 U.S.C. § 554, thus permitting enforcement of the contract. Therefore, because Scott was the prevailing party in this action in state court and is also entitled to the fees incurred during the California bankruptcy action, as they pertain to the enforcement of the REPC, we affirm the trial court's order.[6]

Rather, we interpret *Johnson* to mean that a creditor may not offset a pre-petition claim that has been discharged against a debtor's post-petition liability.

**6.** Majors also raises numerous other reasons why the court improperly awarded damages, fees and costs. For instance, she contends that the award impermissibly results in double recovery; the affidavit seeking to establish damages is hearsay;

the costs are not supported by any document or affidavit; and, the costs incurred in California cannot be recovered in this state. However, because Majors has failed to adequately brief these arguments, we decline to address them on appeal. *See State v. Thomas*, 974 P.2d 269, 272 (Utah 1999) (refusing to address issue when brief omitted substantive analysis and provided only "superficial citation of authority and cursory legal analysis").

## CONCLUSION

¶ 35 We hold that a party's failure to file a notice to submit for decision as contemplated under Rule 4–501 of the Code of Judicial Administration does not prevent the court from considering and deciding a motion that is in all other respects ripe for determination. We also conclude that based upon the uncontested facts presented to the trial court, the court correctly determined that Scott's proposed mutual release agreement did not constitute a breach of the REPC. Finally, we hold that under the facts of this case, 11 U.S.C. § 553 allows Scott to offset his pre-petition obligation to Majors against her liability to him for attorney fees, costs, and damages arising from her pre-petition breach of the REPC, even though some of those fees, costs and damages were actually incurred by Scott during and after the period of the bankruptcy proceedings. We have determined that Majors's other assignments of error are without merit.

¶ 36 Affirmed.

¶ 37 WE CONCUR: JAMES Z. DAVIS, Judge, and NORMAN H. JACKSON, Judge.