2026 UT App 58

## THE UTAH COURT OF APPEALS

CHERISH KRUEGER AND KYLE THOMPSON,
Appellants,
*v.*
SEED CAPITAL INVESTMENTS LLC, WASATCH REALTY LLC,
HEIDI STAPEL, AND DAVID STAPEL,
Appellees.

Opinion
No. 20240011-CA
Filed April 16, 2026

Third District Court, West Jordan Department
The Honorable Matthew Bates
No. 220900527

LaShel Shaw, Attorney for Appellants

Thomas J. Burns, Attorney for Appellees

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN D. TENNEY concurred.

OLIVER, Judge:

¶1      Cherish Krueger and Kyle Thompson (the Kruegers)[1] entered into a lease agreement with Seed Capital Investments LLC (Seed Capital) that provided the Kruegers with the option to purchase the leased property (the Property). The Kruegers were unable to close on the purchase of the Property prior to the agreement's deadline. When Seed Capital refused to complete the sale after the deadline had passed, the Kruegers sued Seed Capital, Wasatch Realty LLC, Heidi Stapel, and David Stapel (collectively, Appellees). The Kruegers alleged multiple causes of

---

1. Both appellants and appellees referred to Krueger and Thompson collectively as "the Kruegers" in their briefing, so we do likewise.

action, including claims for breach of contract against Seed Capital and breach of fiduciary duty against Heidi and David.[2] The district court granted summary judgment to Appellees on the breach of fiduciary duty claim, and after a bench trial, the district court concluded the Kruegers had also failed to prove their breach of contract claim.

¶2     On appeal, the Kruegers challenge both rulings. They assert the evidence attached to Appellees' motion for summary judgment created a genuine dispute of material fact. And they argue Seed Capital breached the contract by repudiating the parties' agreement. We disagree and affirm the district court.

BACKGROUND[3]

*The Lease Agreement with Option for Purchase*

¶3     In May 2020, the Kruegers engaged Heidi—a licensed real estate broker and the owner and principal broker of Wasatch Realty LLC—as a real estate agent to assist them in purchasing a house. The Kruegers located the Property and wished to purchase it. Heidi assisted them in drafting a Real Estate Purchase Contract

---

2. Because Heidi Stapel and David Stapel share a surname, we refer to them by their given names, with no disrespect intended by the apparent informality.

3. We recite the facts pertaining to Appellees' motion for summary judgment "in the light most favorable to the non-moving party." *Magleby Cataxinos & Greenwood, PC v. Schnibbe*, 2024 UT 43, n.1, 562 P.3d 679 (cleaned up). As for the facts related to the bench trial, "we recite the facts from the record in the light most favorable to the findings of the trial court and present conflicting evidence only as necessary to understand issues raised on appeal." *Hillam v. Hillam*, 2024 UT App 102, n.2, 554 P.3d 1137 (cleaned up).

(the REPC), and the seller accepted the Kruegers' $375,000 offer on the Property.

¶4      Unfortunately, the Kruegers struggled to obtain traditional mortgage financing prior to the deadline under the REPC. Hearing of their struggles, Heidi offered to finance the Kruegers' purchase of the Property, stating in a text that she and her husband, David, would provide the Kruegers with a loan. The Kruegers accepted Heidi's offer.

¶5      A few days before closing, Heidi learned from her lender that she would be unable to obtain the home equity line of credit with which she intended to finance the purchase of the Property unless she was purchasing it herself. Heidi contacted the Kruegers and explained the situation. As a solution, Heidi offered to purchase the Property and then lease it back to the Kruegers. The Kruegers agreed, executing an addendum to the REPC that substituted David's company, Seed Capital, as the buyer for the Property.

¶6      The Kruegers and Seed Capital then executed a lease agreement, which included an option for the Kruegers to purchase the Property by February 15, 2021 (the Option Agreement). The Option Agreement provided that the Kruegers would pay Seed Capital $20,000 in option money, $10,650 in interest fees, and $3,043 per month in rent, with a portion of the monthly rent treated as additional option money. The purchase price for the Property was set at $375,000, with all option money credited against the purchase price at closing. Seed Capital then purchased the Property. The Kruegers moved in shortly thereafter and began paying rent to Seed Capital.

*The Amended Option Agreement*

¶7      While the Kruegers exercised their option immediately by providing Seed Capital with the requisite notice of intent to purchase the Property, they ultimately did not purchase the

Property by February 15, 2021. Pursuant to the Option Agreement, the Kruegers' lease then "converted to a month-to-month tenancy."

¶8    The Kruegers subsequently retained an attorney and negotiated an addendum to the Option Agreement (the Amended Option Agreement) that extended their lease and the time to purchase the Property to November 30, 2021, for a purchase price of $445,000. The Amended Option Agreement "provided a grace period in the event that [the Kruegers'] lenders or appraisers did not complete their tasks" by November 30, but it stated, "In no event shall the closing be extended beyond December 6, 2021 or the [Amended Option Agreement] shall terminate and [Seed Capital] shall have the sole remedy of taking possession of the Property and retaining the [$20,000 option] [m]oney as liquidated damages."

¶9    The Kruegers obtained financing to purchase the Property, but their lender "mistakenly prepared loan documents for $435,000, rather than the [required] $445,000." The Kruegers contacted Heidi and asked if they could close for $435,000 and pay the additional $10,000 outside of closing. Heidi texted in response, "Hey, we can't do it. . . . [B]ecause Dave and I are both [real estate] agents we can't have dual contracts. It's illegal for us." Heidi also texted that she "talk[ed] to the general real [estate] attorney with the board of realtors and they said that there's no way to legally . . . take money outside of the closing."

¶10    On December 4, 2021, the Kruegers texted Heidi,

> They are fixing everything. Trying to have docs to title Monday morning because [we] leave the country Monday morning for a week. If they aren't quick []enough[,] [s]igning may not be done till Monday the 13th with us being out of the country till Monday on vacation. I am having them rush everything tho[ugh].

On December 6, the Kruegers left the country on vacation and "[n]either they nor Seed Capital appeared at their respective title companies to close the sale." The sale was not closed by the end of the day on December 6, 2021, as required by the Amended Option Agreement.

*The Lawsuits*

¶11    On December 12, 2021, David posted a "No Cause Notice to Vacate" on the Property's front door. It demanded the Kruegers vacate the Property "no later than January 31, 2022," and described the penalties for unlawful detainer of the Property. Several days later, the Kruegers emailed Heidi stating they signed the closing documents and asking Heidi to complete the sale of the Property. Seed Capital did not complete the sale, and the Kruegers filed suit against Appellees in January 2022.

¶12    The Kruegers asserted multiple causes of action, including, as relevant to this appeal, breach of fiduciary duty and breach of contract. The Kruegers alleged that Heidi and David owed a fiduciary duty to them and breached that duty in a variety of ways. The Kruegers also alleged that Seed Capital anticipatorily breached the Amended Option Agreement by refusing to perform.

¶13    Shortly thereafter, Seed Capital filed an unlawful detainer action against the Kruegers because the Kruegers did not vacate the Property by the January 31 deadline.

*The Motion for Partial Summary Judgment*

¶14    Appellees moved for partial summary judgment (the Motion) on several of the Kruegers' claims, including breach of fiduciary duty. Appellees argued that even assuming Heidi and David owed the Kruegers a fiduciary duty and assuming the duty was breached, the Kruegers could not show "evidence of damage proximately caused by the assumed breach" for three reasons.

First, the Kruegers' transfer of their purchase interest to Seed Capital did not damage the Kruegers because "their effort to purchase the Property failed prior to them agreeing to substitute Seed [Capital]." Second, under the Option Agreement, the Kruegers needed to both signal their intent to exercise their option, which they did, and then obtain financing and close on the Property prior to February 15, 2021, which they did not do. And third, the Kruegers hired counsel to negotiate the terms of the Amended Option Agreement, which "retained multiple terms of the Option [Agreement]." Because the Kruegers sought to enforce the Amended Option Agreement, they eliminated "any avenue" to "suggest that they were damaged by some alleged fiduciary breach."

¶15　The Kruegers filed a memorandum in opposition (the Opposition) and disputed many of Appellees' statements of fact. But the Opposition did not include any evidence of damages caused by Heidi and David's alleged breach of fiduciary duty. Nor did the Opposition include any "separate statement of additional material[] facts in dispute." Utah R. Civ. P. 56(a)(2). In "purport[ing] to dispute most of the facts," the Kruegers "often did not provide any citations." While the Kruegers occasionally cited documents attached to the Motion, they more frequently cited their own complaint or described purported pieces of evidence that would dispute a fact. Yet none of this purported evidence was attached to the Opposition; indeed, the Opposition "did not have any evidence or anything attached to it whatsoever."

¶16　After a hearing on the Motion, the court concluded that the Kruegers had "failed to properly dispute the material statements of fact that were provided in the [Motion]." The court concluded the Kruegers had an obligation "to come forth with some evidence to show that they had been damaged" and that Heidi and David's breach of fiduciary duty "was the proximate cause of that damage" but had failed to do so. With the material facts thus

undisputed, the court granted summary judgment to Appellees on the Kruegers' claim for breach of fiduciary duty.

*The Bench Trial*

¶17 The Kruegers' remaining claims, including their breach of contract claim, were subsequently tried together with Seed Capital's unlawful detainer action in a consolidated bench trial. The court found the Kruegers did not tender payment for the Property to Seed Capital by the December 6 deadline and "did not sign any of the documents necessary to settle and close the sale of the [Property] until December 13." As to Heidi's texts about not taking money outside closing, the court found that "[s]he was merely explaining that she believed that it was illegal for a real estate agent to sign closing documents that listed a transaction price that differed from the price actually paid."

¶18 The district court concluded the Kruegers had "failed to prove a breach of contract claim" because Heidi's "texts were not a repudiation" of the Amended Option Agreement and because the Kruegers "did not perform their obligations under the [Amended Option Agreement], or at least tender performance." The court also concluded that the Kruegers were liable for unlawful detainer because their tenancy had expired, a notice terminating the lease and demanding they quit the Property had been posted, and they had failed to vacate. The court then awarded judgment in favor of Appellees.

ISSUES AND STANDARDS OF REVIEW

¶19 The Kruegers first assert the district court erred in granting summary judgment on their breach of fiduciary duty claim. "We review a district court's grant of summary judgment for correctness, giving no deference to the district court's legal conclusions." *Musselman v. Keele*, 2024 UT App 143, ¶ 12, 559 P.3d 64 (cleaned up).

¶20 The Kruegers next assert the district court erred in concluding Seed Capital did not anticipatorily repudiate the Amended Option Agreement. A district court's conclusion as to whether a party has anticipatorily repudiated a contract is a mixed question of law and fact. *See Hardy v. Montgomery*, 2018 UT App 133, ¶ 10, 428 P.3d 78. We will not set aside the district court's findings of fact "unless clearly erroneous," and we review the district court's "conclusions of law for correctness." *Id.* (cleaned up).

ANALYSIS

I. Fiduciary Duty

¶21 "Breach of fiduciary duty claims generally require proof of four elements: the existence of a fiduciary relationship . . . ; breach of the fiduciary duty; causation, both actual and proximate; and damages." *Gables at Sterling Vill. Homeowners Ass'n, Inc. v. Castlewood-Sterling Vill. I, LLC*, 2018 UT 04, ¶ 52, 417 P.3d 95. The Kruegers contend that the district court erred in granting summary judgment to Appellees on this claim because the evidence showed there were disputed material facts.

¶22 Summary judgment is appropriate when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). But on an issue where the moving party will not bear the burden of proof at trial, a burden-shift occurs:

> On claims for which it will not carry the burden of proof at trial, the moving party may demonstrate its entitlement to judgment as a matter of law by pointing to an absence of evidence establishing one or more of the elements of the plaintiff's claim. Once the moving party does so, to defeat summary

judgment the non-moving party, who bears the burden of proof at trial, must produce affirmative evidence, beyond mere reliance on the pleadings, showing that there is a genuine issue for trial.

*Pioneer Home Owners Ass'n v. TaxHawk Inc.*, 2019 UT App 213, ¶ 30, 457 P.3d 393 (cleaned up).

¶23 Here, the Kruegers bore the ultimate burden of proving their breach of fiduciary duty claim. In the Motion, Appellees argued that, even assuming Heidi and David owed the Kruegers a fiduciary duty and had breached that duty, the Kruegers "ha[d] no evidence that they suffered any damage as a result of the alleged breach." At that point, the burden shifted to the Kruegers to "set forth specific facts" demonstrating "a genuine issue for trial" on causation and damages. *Salo v. Tyler*, 2018 UT 7, ¶ 25, 417 P.3d 581 (cleaned up). The Kruegers failed to do so.

¶24 On summary judgment, "the fact statements of the moving and opposing memoranda constitute the constellation of facts to be considered by the district court." *Warrick v. Property Rsrv. Inc.*, 2018 UT App 197, ¶ 9, 437 P.3d 439; *see also* Utah R. Civ. P. 56(c)(3). "Those same facts are to be considered by the reviewing court on appeal." *Warrick*, 2018 UT App 197, ¶ 9. "And while a nonmovant has the ability to controvert a movant's factual statement by presenting to the district court contrary inferences to be made from the objective facts, to do so properly the nonmovant is required to specifically state the inference to be made." *Jessup v. Five Star Franchising LLC*, 2022 UT App 86, ¶ 30, 515 P.3d 466 (cleaned up).

¶25 Here, as noted by the district court, the Opposition "did not properly dispute any of the material facts asserted by [Appellees]." And it did not include "a separate statement of additional material[] facts in dispute" supported by "citing to particular parts of materials in the record." Utah R. Civ. P. 56(a)(2), (c)(1)(A). In the argument section of the Opposition, the

Kruegers included a single line identifying their damages as "earnest money, down payments[,] and over one hundred thousand dollars in direct amortized payments." But even if we were to credit this as a statement of fact, it was not accompanied by a citation to any evidence. Nor did the Kruegers make any attempt to explain the causal relationship between these alleged damages and any breach of a fiduciary duty.

¶26   Despite this total failure to cite any evidence regarding causation and damages, the Kruegers allege that summary judgment was inappropriate because "the evidence attached to [Appellees'] own motion showed the Kruegers were injured by the Stapels' self-dealing," thus creating a material factual dispute. While it is true that summary judgment may not be entered "[w]here the moving affidavit shows on its face that there is a material issue of fact," *Frisbee v. K & K Constr. Co.*, 676 P.2d 387, 390 (Utah 1984), the Kruegers have "failed to identify any instance where [Appellees'] moving affidavit shows *on its face* that there is a material issue of fact that would preclude summary judgment," *Koerber v. Mismash*, 2015 UT App 237, ¶ 24, 359 P.3d 701 (emphasis added) (cleaned up). Here, on its face, Appellees' evidence shows that the Kruegers contracted to pay various amounts of money in exchange for certain benefits—such as the right to occupy the Property and obtain the option to purchase it. If the Kruegers wished the district court to draw other inferences from Appellees' evidence, they were "required to specifically state the inference to be made." *Jessup*, 2022 UT App 86, ¶ 30 (cleaned up). They did not do so.

¶27   For these reasons, we affirm the district court's grant of summary judgment on the Kruegers' breach of fiduciary duty claim.

## II. Repudiation of the Amended Option Agreement

¶28   The Kruegers next allege the district court erred in concluding that Seed Capital did not repudiate the Amended

Option Agreement. They argue that by refusing to accept a cashier's check for part of the purchase price, Seed Capital repudiated the contract. We disagree.

¶29 As a general rule, anticipatory repudiation occurs "when a party to an executory contract manifests a positive and unequivocal intent not to render performance when the time fixed for performance is due." *Hardy v. Montgomery*, 2018 UT App 133, ¶ 17, 428 P.3d 78 (cleaned up). "In most cases, in order for anticipatory breach to occur, the repudiating party must have communicated, by word or conduct, unequivocally, unconditionally, and positively, its intention not to perform." *Jessup v. Five Star Franchising LLC*, 2022 UT App 86, ¶ 36, 515 P.3d 466 (cleaned up). In this context, the import of a party's communication of its intention not to perform is judged objectively. For example, this court has previously cited the Restatement (Second) of Contracts for the proposition that "[i]n order to constitute a repudiation, a party's language must be sufficiently positive *to be reasonably interpreted* to mean that the party will not or cannot perform." Restatement (Second) of Contracts § 250 cmt. b (A.L.I. 1981) (emphasis added); *see also Jessup*, 2022 UT App 86, ¶ 36 (citing Restatement (Second) of Contracts § 250 cmt. b); *Scott v. Majors*, 1999 UT App 139, ¶ 15, 980 P.2d 214 (same).

¶30 Here, the Kruegers assert the district court erroneously concluded that Heidi's text messages—stating she could not accept $10,000 outside of closing—did not amount to a repudiation of the Amended Option Agreement.[4] They argue that "[n]othing in the parties' contracts precluded the Kruegers from

---

4. On the record before us, it is unclear whether Heidi had the authority to repudiate on behalf of Seed Capital. But since neither Heidi nor Seed Capital argues to the contrary, we assume, without deciding, that Heidi was properly acting on Seed Capital's behalf.

paying a portion of the Property's price directly to [Seed Capital] by cashier's check" and that by refusing to accept a cashier's check, Seed Capital "wrongfully state[d] that [it would] not perform at all unless the other party consent[ed] to a modification of the contract." (Quoting *Scott*, 1999 UT App 139, ¶ 15 (emphasis omitted).)

¶31 The Amended Option Agreement provided that "any monies required to be paid . . . (except for the proceeds of any new loan)" could be delivered "to the other party, or to the escrow/closing office, in the form of cash, wire transfer, cashier's check, or other form acceptable to the escrow/closing office." However, there is no language in the Amended Option Agreement indicating that such other monies were permitted to be paid *outside of closing*. At trial, Heidi testified she had previously attended closings where a cashier's check was used to pay for part of the purchase price, but it was always reflected in the associated documents. Heidi also testified this was not what the Kruegers had proposed; they had instead offered to provide the $10,000 outside of closing.

¶32 The district court found Heidi's testimony credible and found that the Kruegers "asked [Heidi] whether they could close for $435,000 and give her the additional $10,000 outside of closing." The district court further found that Heidi's text messages were "merely explaining that she believed that it was illegal for a real estate agent to sign closing documents that listed a transaction price that differed from the price actually paid." Based on these factual findings, the court concluded Heidi's texts "were not a repudiation" of the Amended Option Agreement.[5]

_____

5. Although the district court categorized this conclusion as a finding of fact, "an ostensible finding of fact that is actually a conclusion of law will be treated as a conclusion of law." *Brown v.*

(continued…)

¶33 As a reviewing court, we will only disturb the district court's factual findings if they are "clearly erroneous"—that is, "if they are in conflict with the clear weight of the evidence, or if this court has a definite and firm conviction that a mistake has been made." *Henshaw v. Henshaw*, 2012 UT App 56, ¶ 10, 271 P.3d 837 (cleaned up). Here, the district court reviewed Heidi's texts, "assessed [her] demeanor[,] and considered [her] . . . testimony in light of the proceedings as a whole." *Staszkiewicz v. Thomas*, 2024 UT App 183, ¶ 20, 562 P.3d 723, *cert. denied*, 568 P.3d 260 (Utah 2025). The district court's factual findings regarding Heidi's texts were not "in conflict with the clear weight of the evidence," nor are we convinced a mistake was made. *Henshaw*, 2012 UT App 56, ¶ 10. Thus, we conclude the court's factual findings were not clearly erroneous.

¶34 We next review the district court's legal conclusion—that Heidi's texts did not amount to a repudiation of the Amended Option Agreement—for correctness. *See Hardy v. Montgomery*, 2018 UT App 133, ¶ 10, 428 P.3d 78. And here, we cannot say Heidi's refusal to take payment for an amount not reflected in the closing documents—even if the method of payment was otherwise permitted by the Amended Option Agreement—could be "reasonably interpreted" as an "unequivocal" or "unconditional" statement that Seed Capital would not or could not perform under the contract. *Id.*

¶35 Heidi's texts lacked the explicit, unequivocal nature of a repudiation.[6] *See supra* ¶ 29. And while a statement of intention

---

*City of Fruit Heights*, 2023 UT App 39, ¶ 19, 529 P.3d 361 (cleaned up).

6. There are times when "a party's conduct is not sufficiently positive to amount to a repudiation under the usual standard, but it is enough to give the other party reasonable grounds to believe

(continued…)

"not [to] perform at all unless the other party consents to a modification of the contract" can indeed constitute a repudiation, *Scott v. Majors*, 1999 UT App 139, ¶ 15, 980 P.2d 214 (cleaned up), Heidi's refusal to accept payment outside of closing cannot reasonably be interpreted as demanding modification of the Amended Option Agreement.

¶36 Accordingly, we agree with the district court that the Kruegers did not prove Seed Capital repudiated the Amended Option Agreement.

## CONCLUSION

¶37 The district court did not err when it granted summary judgment to Appellees on the Kruegers' claim of breach of fiduciary duty, nor did it err in concluding the Kruegers had not proved their breach of contract claim at trial. We thus affirm the district court's rulings.

---

that it will breach by nonperformance." *Jessup v. Five Star Franchising LLC*, 2022 UT App 86, ¶ 37, 515 P.3d 466 (cleaned up). In such cases, the other party may demand "adequate assurance of performance." *Id.* Failure to provide adequate assurance may then constitute repudiation of the contract. *Id.* Here, the Kruegers have not argued that they made a demand for adequate assurance. Therefore, we do not consider whether they had reasonable grounds to do so or whether Heidi provided adequate assurance of performance.