2005 UT App 133

**STATE of Utah, Plaintiff and Appellee,**

v.

**Joel Scott McNEARNEY, Defendant and Appellant.**

No. 20030548–CA.

Court of Appeals of Utah.

March 17, 2005.

Shannon N. Romero, Lori Seppi, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General, and Christine Soltis, Assistant Attorney General, Salt Lake City, for Appellee.

Before BILLINGS, P.J., GREENWOOD, and THORNE, JJ.

## OPINION

BILLINGS, Presiding Judge:

¶ 1 Defendant Joel Scott McNearney argues the trial court erred by granting the State's motion for general discovery. Specifically, Defendant asserts that his conviction should be overturned because the discovery order violated (1) his right against self-incrimination, (2) his due process rights, (3) his right to full representation of counsel, (4) the work-product doctrine, and (5) the attorney-client privilege. We affirm.

## BACKGROUND

¶ 2 In November 2002, Defendant was charged with aggravated burglary, see Utah Code Ann. § 76–6–203 (2002), and aggravated robbery, see Utah Code Ann. § 76–6–302 (2002), both first degree felonies. In November 2002 and April 2003, Defendant formally requested discovery from the State. Specifically, Defendant requested evidence tending to negate or mitigate guilt or inculpate Defendant; recordings, reports, notes, transcripts, or other written materials; statements made by Defendant, codefendant, or any witnesses; a list of witnesses the State intended to call, including names, addresses, and telephone numbers; criminal records of Defendant and potential witnesses; photographs, drawings, and diagrams; scientific reports; notice of intent to present hearsay; and any other evidence the State intended to introduce at trial. The State complied with Defendant's discovery requests.

¶ 3 In December 2002, Defendant's fiancée, Barbara Newell, contacted the prosecutor to report a threat that she had received from Eric Burwell, a man arrested with Defendant, but who was not charged with the crimes. She claimed Burwell had threatened to shoot her and her family if she talked to the police about the robbery. The prosecutor told Newell to report the threat to the police and to discuss the matter with Defendant's counsel. However, Newell did not contact the police until shortly before trial after she had allegedly received two more threats from Burwell.

¶ 4 On May 6, 2003, approximately one week prior to trial, the prosecutor moved for discovery from Defendant under rule 16(c) of the Utah Rules of Criminal Procedure. In particular, the prosecutor requested:

1. Names, addresses, telephone numbers, and dates of birth of all the witnesses that the defense intends to call for trial;

2. Copies of physical evidence, documents, and photographs the defense intends to introduce at trial or an opportunity to inspect such evidence;

3. Copies of any reports and conclusions of any experts that the defendant intends to call for trial, each expert's qualifications, and information concerning any remuneration that the witness may be receiving for such testimony;

4. Copies of any reports prepared by the defense investigators during the course of the investigation of this case;

5. Copies of any reports prepared by defense investigators where the defense intends to call the particular investigator as a witness;

6. Copies of that portion of any reports prepared by defense investigators concerning statements made by witnesses the defense intends to call at trial;

7. Disclosure of any relationship to the defendant of any witness the defense intends to call at trial.

¶ 5 The trial court held a hearing on the discovery motion that same day. Defense counsel objected to the State's discovery request generally, arguing that the prosecutor had failed to establish "good cause" as required under Utah Rule of Criminal Procedure 16(c), and that if reciprocal discovery were routinely allowed, a defense attorney would be compelled to provide information against his or her client and to produce privileged work product.

¶ 6 The court granted the State's motion with modifications. In particular, the court ordered discovery of any witnesses that defense counsel, at that time, had "a good faith intent to call ... at trial" and any existing factual statements of those witnesses. However, defense counsel indicated that she did not possess any factual statements of witnesses she intended to call at trial. In addition, the court limited discovery of "purely rebuttal witnesses" to the time when defense counsel formed the intent to call that witness, i.e., after the State's witnesses have testified and defense counsel forms the intent to call a particular witness. As a result of the discovery ruling, Defendant was only required to disclose that Newell would testify on behalf of Defendant.

¶ 7 A jury trial was held on May 12 and 13, 2003. The jury convicted Defendant as charged. Defendant appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Defendant challenges the trial court's grant of the State's motion for discovery under rule 16(c) of the Utah Rules of Criminal Procedure. "While a trial court is generally allowed broad discretion in granting or denying discovery, ... 'the proper interpretation of a rule of procedure is a question of law, and we review the trial court's decision for correctness.'" *State v. Spry*, 2001 UT App 75, ¶ 8, 21 P.3d 675 (citations omitted).

## ANALYSIS

¶ 9 Defendant argues the trial court's discovery ruling violated (1) his right against self-incrimination, (2) his due process rights, (3) his right to full representation of counsel, (4) the work-product doctrine, and (5) the attorney-client privilege.

¶ 10 Rule 16(c) of the Utah Rules of Criminal Procedure provides:

Except as otherwise provided or as privileged, the defense shall disclose to the prosecutor such information as required by statute relating to alibi or insanity and any other item of evidence which the court determines on good cause shown should be made available to the prosecutor in order for the prosecutor to adequately prepare his case.

Utah R.Crim. P. 16(c).

¶ 11 In *State v. Spry*, 2001 UT App 75, 21 P.3d 675, we interpreted rule 16(c) to mean that when requesting discovery from the defense, the prosecution need only demonstrate "'the materiality of the evidence to the issues to be raised at trial.'" *Id.* at ¶ 22 (quoting *State v. Mickelson*, 848 P.2d 677, 690 (Utah Ct.App.1992)). While the defendant in *Spry* raised no constitutional or privilege challenges, we noted "that a defendant's protection against self-incrimination prevents extensive prosecution discovery and is para-

mount to Rule 16(c) of the Utah Rules of Criminal Procedure." *Id.* at ¶ 23 n. 6. In fact, the rule itself only allows prosecutorial discovery "[e]xcept as otherwise provided or as privileged." Utah R.Crim. P. 16(c).

¶ 12 In the instant case, Defendant raises various constitutional and privilege challenges. We agree with Defendant that a trial court must analyze a prosecutorial discovery request in light of any specific privileges asserted by a defendant and make findings, if necessary, to explain its rationale for the discovery ruling.

¶ 13 First, Defendant maintains that the trial court violated his right against self-incrimination by ordering Defendant to disclose the identity of any witnesses he intended to call at trial. However, the privilege against compulsory self-incrimination "adheres ... to the person, not to information that may incriminate him." *United States v. Nobles,* 422 U.S. 225, 233, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (quotations and citations omitted). The privilege "protects only against forced individual disclosure of a 'testimonial or communicative nature.'" *Id.* at 233 n. 7, 95 S.Ct. 2160 (citations omitted). The discovery order in this case did not compel Defendant to reveal evidence of criminal activity nor to give testimony; it merely required a list of those witnesses Defendant had a good-faith intention to call at trial. *See, e.g., State ex rel. Keller v. Criminal Court,* 262 Ind. 420, 317 N.E.2d 433, 437 (1974) ("When we consider that it is well-established that the State has a right to fingerprint the defendant, to photograph him, to examine him physically, to take samples of blood, hair and other like materials from his body, and to secure samples of his handwriting, it can scarcely be argued that to ask for a list of witnesses he expects to produce at the trial is an invasion of his constitutional right against self-incrimination."); *People v. Boyd,* 74 A.D.2d 647, 425 N.Y.S.2d 134, 137 (App.Div.1980) ("There is, however, no inherent violation of the defendant's right against self[-] incrimination by calling upon him to reveal, with appropriate precautions, the names of the prospective witnesses he may call to testify."). Therefore, the discovery order requiring Defendant to reveal the identity of any witnesses he intended to call at trial did not violate Defendant's right against self-incrimination.

¶ 14 Second, Defendant asserts that the discovery order violated due process because the trial court did not ensure that discovery was reciprocal. However, the order did not violate due process because Defendant was not ordered to disclose a category of information that the State was not required to disclose. In *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), the United States Supreme Court held that an Oregon state statute which required the defendant to disclose his alibi witnesses without requiring reciprocal discovery by the state violated due process. *See id.* at 472, 93 S.Ct. 2208. Here, Defendant sought discovery of all the prosecution and police investigative reports, handwritten notes, video recordings, audio recordings, transcripts, and witness statements. Thus, Defendant's due process rights were not violated.

¶ 15 Third, requiring Defendant to disclose the identities of defense witnesses did not violate the work-product privilege. To be considered work-product, the material must be (1) "documents and tangible things otherwise discoverable, (2) prepared in anticipation of litigation or for trial, (3) by or for another party or by or for that party's representative." *Gold Standard, Inc. v. American Barrick Res. Corp.,* 805 P.2d 164, 168 (Utah 1990). However, the privilege is not absolute and may be waived. *See Nobles,* 422 U.S. at 239, 95 S.Ct. 2160. Here, the State was aware of the existence of defense witness Newell and the content of her testimony. Because Newell approached the prosecutor five months prior to trial and disclosed the information to which she eventually testified, Defendant could not have been prejudiced by this disclosure. Accordingly, we need not determine whether a defense witness list is privileged under the work-product doctrine because any privilege that may have existed was waived. *See Gold Standard,* 805 P.2d at 171 ("If the adverse party has possession of the [work-product] material, the privilege is waived.").

¶ 16 Fourth, the disclosure of Newell as a defense witness is not protected by the attorney-client privilege. Rule 504(b) of the Utah Rules of Evidence protects communications between attorney and client as confidential. *See* Utah R. Evid. 504(b). Rule 504(a)(6) defines confidential communications as those "not intended to be disclosed to third persons." Utah R. Evid. 504(a)(6). Thus, even assuming the disclosure of Newell as a witness could be considered "communication" under the rule, the information was not confidential because the prosecutor was aware of the witness and the content of her testimony. *See* Utah R. Evid. 507(a) (exempting from protection communications which are disclosed to third parties). Thus, disclosure of Newell as a witness is not protected under the attorney-client privilege.[1]

¶ 17 Defendant also argues that the trial court erred by requiring him to produce any written or recorded statements of the witnesses he intended to call at trial. However, Defendant acknowledged that he did not possess any written or recorded statements of said witnesses. Thus, even assuming the trial court erred, Defendant has failed to demonstrate reversible error. *See* Utah R.Crim. P. 30(a) ("Any error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded."); *see also George v. State*, 397 N.E.2d 1027, 1035 (Ind.Ct.App.1979) (holding that while the trial court abused its discretion by ordering the defendant to produce statements of defense witnesses, the defendant had failed to show reversible error because no witness statements existed); *Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 100, 82 P.3d 1076 ("An erroneous decision to admit or exclude evidence does not constitute re-

versible error unless the error is harmful. An error is harmful if it is reasonably likely that the error affected the outcome of the proceedings." (quotations and citations omitted)).

¶ 18 Accordingly, we need not decide whether requiring a defendant to produce witness statements of those witnesses he or she intends to call at trial violates (1) the work-product doctrine, (2) due process, (3) the right against self-incrimination, (4) the right to full representation of counsel, or (5) the attorney-client privilege. In this case, no witness statements existed and, therefore, discovery of a nonexistent document could not have affected a substantial right of Defendant or the outcome of the trial. *See* Utah R.Crim. P. 30(a); *Jensen*, 2003 UT 51 at ¶ 100, 82 P.3d 1076.

## CONCLUSION

¶ 19 We hold that the trial court did not violate Defendant's (1) right against self-incrimination, (2) due process rights, (3) right to full representation of counsel, (4) work-product privilege, or (5) attorney-client privilege by ordering Defendant to disclose the name of a defense witness. Accordingly, we affirm.

¶ 20 WE CONCUR: PAMELA T. GREENWOOD and WILLIAM A. THORNE JR., Judges.

---

1. Defendant does not argue that disclosure of the witness list violated his right to full representation of counsel; Defendant merely argues that requiring him to disclose existing factual statements of witnesses he intended to call at trial violated this right. In particular, Defendant argues that requiring disclosure of a witness statement would "infringe on a defendant's constitutional right to the effective assistance of counsel because of the chilling effect it would have on

defense investigation." *State v. Williams*, 80 N.J. 472, 404 A.2d 34, 37 (1979). However, because nothing in the record in the instant case indicates that ordering disclosure of either the witness list or existing witness statements had, in fact, a chilling effect on Defendant's investigation, we refuse to address such a speculative claim. To rule otherwise would eviscerate rule 16(c) of the Utah Rules of Criminal Procedure.