2023 UT App 8

# THE UTAH COURT OF APPEALS

JONES WALDO HOLBROOK & MCDONOUGH PC, KENNETH A.
OKAZAKI, AND CHRISTOPHER L. PAULSON,
Appellants,
*v.*
3293 HARRISON BLVD. LLC,
Appellee.

Opinion
No. 20220142-CA
Filed January 20, 2023

Second District Court, Ogden Department
The Honorable Jennifer L. Valencia
No. 200906357

Kenneth B. Black, Wesley Harward, and Samuel C.
Straight, Attorneys for Appellants

Aaron R. Harris, Steven C. Smith, and Kipp S. Muir,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and RYAN D. TENNEY
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Kenneth A. Okazaki and his law firm, Jones Waldo
Holbrook & McDonough PC (Jones Waldo), assisted their client,
Christopher L. Paulson, (collectively, Appellants) in recording a
Notice of Lis Pendens against property located in Ogden, Utah
(the Property), which was owned by 3293 Harrison Blvd. LLC
(Harrison). At the time, Okazaki and Jones Waldo were
representing Christopher in his divorce from Trishna Paulson,
and Trishna, a member of Harrison, was attempting to sell the
Property. Harrison subsequently filed a complaint alleging
wrongful lien and intentional interference with economic

relations. In the course of discovery, Harrison sought documents from Jones Waldo that Appellants alleged were protected by the attorney-client and work-product privileges. Harrison filed two statements of discovery issues (SODIs)[1] relating to Jones Waldo's compliance with the discovery requests. The district court granted relief with respect to both SODIs. Appellants sought, and this court granted, interlocutory review of the district court's orders. On appeal, we are asked to determine whether the district court erred in granting the requested relief. Because the justification provided by the district court in its order did not support its decision to require production, we reverse its grant of one of the two SODIs.

BACKGROUND

¶2    Okazaki, an attorney who worked for Jones Waldo, represented Christopher in his divorce from Trishna. The district court's temporary orders in the divorce case prohibited either party from "dissipat[ing] any marital asset outside of the regular course of the parties' businesses and their historical practices." (Quotation simplified.)

¶3    During their marriage, Christopher and Trishna organized and were co-managers of Harrison. Harrison owns the Property. A trust created by the Paulsons held an 89.22% membership interest in Harrison, while the Paulsons' four children each held a

---

1. Rule 37 of the Utah Rules of Civil Procedure outlines the procedure parties must follow when seeking the court's resolution of a discovery dispute and a discovery order. Parties alleging incomplete discovery responses or that responsive documents have been withheld must first file a short "statement of discovery issues" with the court outlining, among other things, the relief sought and certifying that the party has in good faith conferred or attempted to confer with the other affected parties. Utah R. Civ. P. 37(a).

2.695% membership interest. The Property was purchased using premarital funds belonging to Trishna, and the operating agreement for Harrison prohibited any equity owner from recording a lis pendens on property owned by the company.

¶4     While the temporary orders for the Paulsons' divorce were in place, Harrison finalized a commercial real estate purchase contract (the REPC) to sell the Property for $2,050,000. Upon learning of the REPC, Okazaki, on behalf of Christopher, recorded a Notice of Lis Pendens[2] with the Weber County Recorder and sent a letter to the Property's listing agent demanding that the agent immediately withdraw any offers or acceptance of offers on the Property. Subsequently, the buyer for the Property canceled the REPC.

¶5     Eventually, Appellants released the lis pendens, and in the divorce proceedings, Trishna succeeded in an unopposed motion for summary judgment determining that the trust's membership interest was her separate property rather than marital property. Harrison then sued Appellants, alleging claims for wrongfully recording the lis pendens and intentional interference with economic relations.

¶6     Appellants filed a motion for summary judgment on Harrison's claims, but the district court denied the motion. The

---

2. Under Utah's lis pendens statute, "[a]ny party to an action . . . that affects the title to, or the right of possession of, real property may file a notice of pendency of action." Utah Code Ann. § 78B-6-1303(1)(a) (LexisNexis 2018). "The recording of a lis pendens provides constructive notice to all persons that the rights and interests in the property at issue are controverted. One who purchases property subject to a lis pendens acquires only the grantor's interest therein, as determined by the outcome of the litigation." *Jordan Constr., Inc. v. Federal Nat'l Mortgage Ass'n*, 2017 UT 28, ¶ 38, 408 P.3d 296 (quotation simplified).

court explained that, based upon the undisputed facts submitted for purposes of the motion, it was "reasonable to infer that at the time the Notice [of Lis Pendens] was recorded . . . , all the [Appellants] knew the . . . Property was not an asset subject to division in the divorce and that no legal action against it had been filed," and that the Notice of Lis Pendens was therefore "groundless and consequently contained an intentional material misstatement or false claim."

¶7      In the course of subsequent discovery in the wrongful lien litigation, Harrison requested that Appellants identify "each communication between any attorney, paralegal, legal secretary, and/or other agent of Jones Waldo" and Christopher "that related, in any way, to the preparation and/or recording" of the Notice of Lis Pendens (Interrogatory No. 1). Harrison also made the same request regarding Jones Waldo's internal communications (Interrogatory No. 2) and requested that Jones Waldo produce all documents identified in Interrogatory No. 1 and Interrogatory No. 2. Jones Waldo objected to these discovery requests on the ground that they sought information protected by the attorney-client privilege and the attorney-work-product privilege.[3] The parties participated in a "meet and confer" regarding Jones Waldo's objections, and Jones Waldo agreed to provide a limited response to the interrogatories and to produce a privilege log of withheld and redacted documents that it deemed privileged.

¶8      Harrison then filed two SODIs with the district court. The first SODI alleged that Jones Waldo had refused to respond to Interrogatory No. 1 and had not provided a privilege log regarding communications between Jones Waldo and Christopher. The second SODI asked the court to order Jones Waldo to produce the requested documents and communications on the grounds that (1) Jones Waldo waived attorney-client privilege by denying allegations in Harrison's complaint, (2) Jones

---

3. The divorce litigation was still ongoing at that time.

Waldo had put any communications related to the lis pendens at issue by denying the allegations in Harrison's complaint, and (3) the privilege does not apply to communications made in furtherance of fraud. Both SODIs also asked for an award of attorney fees.

¶9 Jones Waldo responded that it had, in fact, included "multiple communications between Jones Waldo and [Christopher]" in its privilege and redaction logs and that it had fully responded to Interrogatory No. 1. It further explained that the parties did not actually discuss Interrogatory No. 1 during the meet and confer and that Harrison had never "indicated, prior to the filing of [the first SODI], that Jones Waldo's logs did not contain the communications between Jones Waldo and [Christopher]." Jones Waldo also continued to assert that the attorney-client and work-product privileges applied to the requested communications.

¶10 The district court did not hear oral argument on the SODIs. Instead, it issued orders granting the relief requested by Harrison. As to the first SODI, the court determined that Jones Waldo had not responded to Interrogatory No. 1, "as modified by the parties' meet and confer," and ordered it to do so within seven days. As to the second SODI, the court made the following determination:

> [F]acts and communications related to any of the following subjects are directly at issue in this case and, therefore, are not protected from discovery by the attorney-client communication and/or work product privilege(s): [1] any Defendant's consideration of the Notice of Lis Pendens at issue in this case, [2] research regarding facts and/or law related to the Notice of Lis Pendens at issue in this case, [3] drafting of the Notice of Lis Pendens at issue in this case, [4] recording, or causing to [be] recorded, the Notice of Lis Pendens at issue in this

case, and/or [5] any response to any demand by Plaintiff to remove, release, and or withdraw the Notice of Lis Pendens at issue in this case.

As to both SODIs, the court ordered Jones Waldo to pay Harrison's attorney fees incurred in pursuing the court's resolution of the discovery issues.

¶11   Jones Waldo sought—and we granted—interlocutory review of the district court's determination that Jones Waldo had not fully responded to the discovery request, its determination that the requested documents and communications were not privileged, and its award of attorney fees. Jones Waldo also obtained a stay of enforcement of the court's orders pending the outcome of this appeal.

## ISSUE AND STANDARD OF REVIEW

¶12   Appellants challenge the district court's determination that the attorney-client and work-product privileges do not apply in the context of this case. "The existence of a privilege is a question of law for the court, which we review for correctness, giving no deference to the district court's determination." *Chard v. Chard*, 2019 UT App 209, ¶ 31, 456 P.3d 776 (quotation simplified).

## ANALYSIS

### I. The First SODI

¶13   On appeal, Appellants contest the district court's ruling on both SODIs. However, their entire argument focuses on the applicability of the attorney-client and work-product privileges to the discovery requested by Harrison. While this argument is persuasive with respect to the district court's grant of relief with respect to the second SODI, *see infra* section II, it does not

adequately address the district court's basis for granting relief with respect to the first SODI.

¶14     In the first SODI, Harrison alleged that Jones Waldo had not provided "any response to Interrogatory [No.] 1, and did not provide any log of withheld (based on privilege) communications between Jones Waldo and Christopher." Jones Waldo objected that it had, in fact, responded to Interrogatory No. 1 and had turned over a privilege log. Nevertheless, the court granted relief with respect to the first SODI on the basis that Jones Waldo had "not responded to [Harrison's] Interrogatory No. 1 (as modified by the parties' meet and confer), and the deadline for responding has passed." Thus, the court's determination on the first SODI appears to have turned, not on the question of privilege, but on whether Jones Waldo had provided the response to Interrogatory No. 1 that it had agreed to provide in the parties' meet and confer. But Appellants' arguments on appeal do not address this question; rather, they focus solely on the question of privilege. Because Appellants have not adequately addressed the basis of the district court's decision with respect to the first SODI, we decline to disturb that decision. *See, e.g.*, *Carlton v. Brown*, 2014 UT 6, ¶ 48, 323 P.3d 571 (declining to consider a claim on appeal where the appellant did not "engage the district court's analysis" of that issue).

¶15     Appellants' argument is likewise deficient with respect to the district court's award of attorney fees in relation to the first SODI. Their attorney fee argument asserts that even if the district court correctly granted the first SODI, it abused its discretion in awarding fees because their position regarding privilege was "substantially justified." *See* Utah R. Civ. P. 37(7)(K) (providing for an award of attorney fees in relation to discovery issues if a "party, witness, or attorney did not act in good faith or asserted a position that was not substantially justified"). However, they have not argued that their position that Jones Waldo had complied with Interrogatory No. 1, as modified by the meet and

confer, was substantially justified. Thus, we have no basis on which to reverse the district court's award of attorney fees with respect to the first SODI.[4]

## II. The Second SODI

¶16   With respect to the second SODI, the district court determined that the attorney-client and work-product privileges do not apply to this case and that Jones Waldo was therefore required to produce the requested communications. However, the only justification the district court provided for this determination was that subjects relating to the lis pendens "are directly at issue in this case."[5] We do not agree that subjects generally being at

---

4. In the district court, Jones Waldo did argue that it had complied with Interrogatory No. 1 and that its response to Interrogatory No. 1 was not discussed during the meet and confer. It is unclear why the district court did not address this assertion in its order, but as Jones Waldo has not raised any arguments regarding the adequacy or accuracy of the district court's findings regarding its compliance with Interrogatory No. 1, we are not in a position to review the court's finding that Jones Waldo had not responded.

5. This is a vague justification, and the court did not elaborate on this conclusion or make any factual findings in support of it. Appellants interpret the district court's ruling as concluding that the communications and work product in this case are not subject to privilege at all and argue that we should reverse on the basis that this conclusion was clearly in error. Harrison, on the other hand, urges us to read the district court's ruling as incorporating all the arguments it made to the district court concerning waiver and the crime/fraud exception and to infer factual findings in support of those arguments.

We are not convinced that the district court would have concluded that the privileges were entirely inapplicable to the

(continued…)

issue in a case is a sufficient basis to disregard the attorney-client or work-product privileges.[6]

---

types of communications at issue in this case, as Appellants suggest. And as we will discuss, *see infra* note 6, we do not believe the district court's decision may be reasonably read as relying on the crime/fraud exception. Rather, the decision is most logically read as relying on a theory of waiver, as waiver may be based on the client placing attorney-client communication "at issue" in the case, *see Chard v. Chard*, 2019 UT App 209, ¶ 63, 456 P.3d 776 (quotation simplified), and the court's conclusion rested on the communications being "at issue." Accordingly, our analysis focuses primarily on the question of whether the attorney-client or work-product privileges were waived.

6. Harrison urges us to read the district court's decision as adopting Harrison's argument that the crime/fraud exception to the attorney-client privilege applies. *See generally* Utah R. Evid. 504(d)(1) (providing an exception to the attorney-client privilege where "the services of the legal professional were sought or obtained to enable or aid anyone to commit . . . a crime or fraud"). However, there is nothing in the district court's decision to suggest that it applied that exception to defeat the privilege.

Harrison nevertheless argues that we should affirm on the alternative basis of the crime/fraud exception. To affirm on an alternative basis, we would have to do so on a ground or theory that is "apparent on the record," *see Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (quotation simplified), that is, we would have to conclude that "sufficient and uncontroverted evidence support[s] the ground or theory" so as "to place a person of ordinary intelligence on notice that the prevailing party may rely thereon on appeal" and that the ground or theory is "sustainable by the factual findings of the trial court," *see In re A.B.*, 2022 UT 39, ¶ 45 (quotation simplified). A ground is not apparent on the

(continued…)

¶17 With respect to the attorney-client privilege, the Utah Rules of Evidence provide,

> A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications if: (1) the communications were made for the purpose or in the course of obtaining or facilitating the rendition of legal services to the client; and (2) the communications were: (A) between (i) the client . . . and (ii) the legal professional [or] the legal professional's representatives . . . .

---

record where "further record development [is] necessary." *Pentalon Constr., Inc. v. Rymark Props., LLC*, 2015 UT App 29, ¶ 26, 344 P.3d 180.

Harrison maintains that the court made "findings" in its earlier ruling denying Appellants' motion for summary judgment that should be construed as a determination that the communications at issue were made in furtherance of a crime or fraud. But the court did not find in its summary judgment ruling that Appellants committed fraud—indeed, courts do not make factual findings in ruling on motions for summary judgment. *See Larson v. Stauffer*, 2022 UT App 108, ¶ 25, 518 P.3d 175; *iDrive Logistics LLC v. IntegraCore LLC*, 2018 UT App 40, ¶ 51, 424 P.3d 970. Instead, it merely determined that a finder of fact *could* find, considering the "facts in a light most favorable to" Harrison, that Appellants had made "an intentional material misstatement or false claim." "To invoke the crime-fraud exception, a party challenging the attorney-client privilege must make a prima facie showing that the communication was made in furtherance of a crime [or] fraud." *Transonic Sys., Inc. v. Non-Invasive Med. Tech.*, 192 F.R.D. 710, 715 (D. Utah 2000) (quotation simplified). There is simply nothing to suggest that such a prima facie showing was made, much less that it was apparent on the record.

Utah R. Evid. 504(b). However, the privilege may be waived by a client who "discloses or consents to the disclosure of any significant part of the matter or communication." *Id.* R. 510(a)(1).

¶18 "One common way to waive the attorney-client privilege is to place at issue in litigation matters that implicate attorney-client communications." *Chard v. Chard*, 2019 UT App 209, ¶ 63, 456 P.3d 776 (quotation simplified). This occurs "when the party seeking application of the attorney-client privilege places attorney-client communications at the heart of a case" and requires that "*the client* assert[] a claim or defense" and attempt "to prove that claim or defense by disclosing or describing an attorney client communication." *Krahenbuhl v. Cottle Firm*, 2018 UT App 138, ¶ 9, 427 P.3d 1216 (quotation simplified); *see also Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("[A] party can waive the attorney client privilege by asserting claims or defenses that put his or her attorney's advice in issue in the litigation. . . . A defendant may also waive the privilege by asserting reliance on the advice of counsel as an affirmative defense."). In other words, a party "cannot invoke the attorney-client privilege to deny [another party] access to the very information that [party] must refute in order to succeed against" the privilege holder's claim or defense. *See Terry v. Bacon*, 2011 UT App 432, ¶ 17, 269 P.3d 188 (quotation simplified).

¶19 Harrison asserts that Christopher "waived the attorney client privilege by placing his attorney-client communications at the heart of this case." In support of this argument, Harrison points to the allegations raised in its complaint that (1) Appellants acted together with authority from each other, (2) recording the lis pendens went beyond any legitimate representation of Christopher, (3) Appellants knew or should have known that the lis pendens was groundless, (4) Appellants lacked an honest belief that the lis pendens was proper, and (5) Appellants' conduct was willful, malicious, or intentional, or it recklessly disregarded the rights of others. Harrison then asserts that because these

allegations formed the basis of its claims, Christopher's denial of the allegations put any privileged attorney-client communications pertaining to them at issue.

¶20 We are not persuaded that a mere denial of allegations in a complaint is enough to waive the attorney-client privilege simply because the allegations concern matters on which confidential attorney-client communications may shed light. The fact that a defendant denies allegations of wrongful conduct does not necessarily introduce into the case the contents of protected and confidential attorney-client communications. To waive the attorney-client privilege, the party asserting the privilege must rely on a defense that at least requires the examination of the confidential communications. Were we to accept Harrison's position, any person who engages the services of a lawyer and discloses to their attorney confidential information pertaining to a case in which they are a defendant would be faced with the dilemma of either admitting all allegations raised against them in a complaint or waiving their attorney-client privilege. This would be an absurd result that does not comport with our caselaw on waiver of the attorney-client privilege. While we recognize that "the privilege which protects attorney-client communications may not be used both as a sword and a shield," *id.* (quotation simplified), Harrison did not argue and the district court did not find that Christopher attempted to assert the privilege as a sword in this case.[7] So far as we can tell, Appellants' denials of liability

---

7. On appeal, Harrison asserts that Christopher's "Rule 26 disclosures of witnesses also waived any privilege because he claims he may testify himself and call his attorneys at Jones Waldo . . . to testify at trial about Jones Waldo's representation and the Lis Pendens." However, this argument does not appear to have been made to the district court. And given that Christopher's attorneys are parties to this case, we are not convinced that disclosing them as potential witnesses necessarily has the same

(continued…)

and of the claims of wrongful conduct have not yet injected defenses into the case that will rely on any protected communications.[8] And without such a finding, the court's

---

impact on the attorney-client privilege as it did in *Chard v. Chard*, 2019 UT App 209, 456 P.3d 776, where the attorneys were not parties to the case. *See id.* ¶¶ 64–65 (holding that listing attorneys as witnesses in initial disclosures while broadly stating that they would testify about "matters in the pleadings," placed "the attorneys' knowledge—about all matters raised in the pleadings—at issue in the litigation" (quotation simplified)). In any event, we are unwilling to make such a determination where this argument is unpreserved for our review.

Nevertheless, we acknowledge the possibility that, as litigation proceeds, Christopher may raise defenses that could waive the attorney-client privilege. Additionally, Harrison may have other means of accessing some of the information contained in the privileged communications, such as by deposing Okazaki and other attorneys and asking them what they personally knew at the time the lis pendens was recorded.

8. Harrison points to Christopher's deposition where he refused, on grounds of attorney-client privilege, to answer questions about why he recorded the lis pendens and whether he relied on his attorneys in doing so. He also stated that he had not made decisions about the lis pendens independent of his lawyers. Harrison asserts that these statements implicated the attorney-client privilege and showed that he had placed his attorneys' knowledge at issue. We disagree with Harrison's assessment. Harrison's position appears to be that Christopher was required to either answer questions about communications he claimed were privileged or waive the privilege by refusing to answer. Such a conclusion would render the attorney-client privilege essentially meaningless. Moreover, we do not construe Christopher's statement that he did not act independently of his

(continued…)

conclusion that the attorney-client privilege did not apply under the facts of this case was erroneous.

¶21    Like attorney-client communications, attorney work product "prepared in anticipation of litigation or for trial" is subject to privilege. Utah R. Civ. P. 26(b)(6). And like the attorney-client privilege, the work-product privilege may be waived through disclosure. *See State v. McNearney*, 2005 UT App 133, ¶ 15, 110 P.3d 183. Moreover, a party seeking discovery may overcome the privilege by showing (1) that they have a "substantial need of the materials" and (2) that they are "unable without undue hardship to obtain substantially equivalent materials by other means." Utah R. Civ. P. 26(b)(6).

¶22    We reject the district court's conclusion that Jones Waldo's work-product privilege was waived due to the subject matter being "at issue" for the same reason we reject that conclusion with respect to attorney-client communications. Harrison also asks us to infer that the court recognized its need of the materials and inability to obtain equivalent materials. But we are unable to stretch the district court's decision that far. Even if we were to construe the court's finding that certain subjects were "at issue" as a finding that Harrison had a substantial need of the privileged materials, there is nothing in the court's ruling that can be construed as addressing whether Harrison was able "without undue hardship to obtain substantially equivalent materials by other means." *See id.* Without such a finding, the court could not readily disregard the work-product privilege.

¶23    Because the court erred in concluding that the attorney-client and work-product privileges did not apply, its grant of the relief requested in the second SODI was erroneous. Accordingly,

---

lawyers to assert a defense of good-faith reliance on counsel. *See generally Doe v. Maret*, 1999 UT 74, ¶ 9, 984 P.2d 980, *overruled on other grounds by Munson v. Chamberlain*, 2007 UT 91, 173 P.3d 848.

the court also erred in awarding Harrison its attorney fees related to the second SODI.

CONCLUSION

¶24     Because Appellants have not adequately challenged the basis of the district court's grant of relief with respect to the first SODI, we decline to disturb its decision concerning that order. However, we vacate the district court's grant of relief with respect to the second SODI, including its award of attorney fees, and remand this case for further proceedings consistent with this opinion.

———————