2023 UT App 39

## THE UTAH COURT OF APPEALS

SHELLY BROWN,
Appellant,
*v.*
CITY OF FRUIT HEIGHTS,
Appellee.

Opinion
No. 20210100-CA
Filed April 13, 2023

Second District Court, Farmington Department
The Honorable David J. Williams
No. 190700975

Leonard E. McGee and Peter R. Mifflin,
Attorneys for Appellant

Matthew D. Church, Jeremy M. Seeley, and David L.
Church, Attorneys for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN M. HARRIS concurred.

LUTHY, Judge:

¶1     Shelly Brown appeals the district court's grant of summary judgment in favor of the City of Fruit Heights in her slip-and-fall case. She alleges that she was seriously injured when she slipped and fell on black ice in a City-owned park-and-ride lot and that the City negligently created the dangerous condition and negligently failed to prevent, remedy, or warn her about it.

¶2     The City moved for summary judgment, asserting that Brown had failed to present evidence that the City created the black ice or had actual or constructive knowledge of the black ice. The district court agreed and granted the motion.

¶3 On appeal, Brown contends that she presented evidence to support her claims that the City created the dangerous condition and had both actual and constructive knowledge of it, and that the district court impermissibly weighed evidence and made factual findings in ruling on the City's motion. We disagree and affirm.

BACKGROUND[1]

¶4 At about 7 a.m. on December 27, 2017, just as she had done nearly every workday for more than four years, Brown parked in a City-owned park-and-ride lot, planning to catch a Utah Transit Authority bus at a stop along the sidewalk next to the lot. No snow was falling that morning, but there had been a snowstorm on Christmas Day, two days earlier.

¶5 Portions of the lot had been plowed since the storm. "[T]he areas where [cars] drove[,] . . . in between . . . the sections where cars parked[,] [were] generally cleared." But "there was [still] snow under all the vehicles." This was not new. An "ongoing problem [was] that the plows were out after cars had already parked," and "[n]obody ever went back and cleared [the] snow that was left under the vehicles." As a result, "[c]ars pulling out of the stalls would carry snow with them in their tires and redeposit it on those areas that had already been plowed." "So they just basically were redepositing snow back in those middle areas where [cars] drive and where [people] walk."

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *MacFarlane v. Applebee's Rest.*, 2016 UT App 158, n.1, 378 P.3d 1286 (cleaned up). Our quotations of the evidentiary record are from Brown's deposition testimony.

¶6 When Brown exited her car that morning, she "slipped a little bit as [she] put [her] foot out." She then saw "the remnants [of snow] that [were] left over after the snowstorm on [Christmas Day]" as well as "what looked like . . . a lot of ice or black ice in the parking lot."

¶7 As had happened at other times, Brown became "concerned about [the] ice." When that happened, Brown would "typically try to follow [a] snow path, hoping that there[] [was] not ice hidden underneath." That morning, "[t]here was only one [such] path for [her] to follow," and she began "walking along the snow." Eventually, "when [she] stepped off of the snow onto what [she] thought was safe pavement," she slipped on some black ice and "went down," sustaining serious injuries.

¶8 Brown sued the City, alleging multiple theories of negligence: that the City negligently created the dangerous condition, that the City negligently failed to prevent the dangerous condition, and that the City negligently failed to remedy or warn against the dangerous condition.

¶9 During fact discovery, Brown was the only person deposed, and neither party produced documentary evidence regarding the City's alleged breach of its duty of care.[2]

¶10 In her deposition, Brown testified that nearly two years before this incident, she had on one occasion emailed the City to express concern about "the [icy] condition of the sidewalk" adjacent to the park-and-ride lot. But she acknowledged that she had never contacted the City "about the condition of the parking lot itself," including "after the snow event on the 25th."

---

2. Brown produced "[p]hotos of [the] scene," but neither party relied on those photos below, and those photos are not part of the record on appeal.

¶11 Regarding the City plowing the lot after the storm on Christmas Day, Brown testified that she "assum[ed] it was not plowed until the 26th . . . because there was snow under all of the vehicles" when she arrived on the 27th and, she reasoned, "had someone plowed it on the 25th, then there would have been no cars there and they would have been able to plow it completely."

¶12 Brown also testified that she did not see any salt in the parking lot on December 27th or on any other day. Finally, she gave this opinion testimony: "The problem that created the icy conditions was [that] during the day the snow that was left under the vehicles would melt and then freeze overnight. And then not having any salt applied additionally added risk to someone slipping and falling."

¶13 Brown produced no evidence of the temperatures during the morning of her fall or during the days and nights preceding her fall. Nor did she produce evidence of the temperature or time required to create the ice on which she fell. She also presented no evidence as to how salt would have affected the time or temperature required to create that ice.

¶14 After the close of fact discovery, the City moved for summary judgment, arguing that Brown's negligence claim failed because she had not presented evidence that the City breached its duty of care—specifically, that she had presented no evidence that the City created the dangerous condition, no evidence that the City had actual knowledge of the dangerous condition, and no evidence that the City had constructive knowledge of the dangerous condition. Brown opposed the motion, arguing that she had presented evidence to support each of these allegations.

¶15 The district court agreed with the City and granted the motion. Brown now appeals.

ISSUE AND STANDARD OF REVIEW

¶16    Brown contends that in granting summary judgment the district court impermissibly weighed evidence and made factual findings. She also argues that she presented evidence to support her claim that the City created the black ice that caused her fall and her claim that the City had actual and constructive knowledge of the black ice.[3] "We review a district court's grant of summary judgment for correctness and view all facts and fair inferences drawn from the record in the light most favorable to the nonmoving party." *Edwards v. Utah's Johnny Appleseed Inc.*, 2018 UT App 43, ¶ 11, 420 P.3d 68 (cleaned up).

ANALYSIS

I. The District Court Did Not Impermissibly Weigh Evidence or Make Factual Findings.

¶17    Brown asserts that the district court impermissibly weighed evidence and made factual findings when it ruled on the City's motion for summary judgment. She is correct that "[a] trial court is not authorized to weigh facts in deciding a summary judgment motion, [and] is only to determine whether a dispute of material fact exists." *Pigs Gun Club, Inc. v. Sanpete County*, 2002 UT 17, ¶ 24, 42 P.3d 379. But she is mistaken in her assertion that the district court weighed evidence and made factual findings.

---

3. Brown also contends that the district court improperly considered affidavit testimony from, she asserts, an undisclosed City witness whose testimony lacked foundation. Because the district court did not rely on the affidavit, and because we do not rely on the affidavit or treat it as part of the evidentiary record for purposes of our analysis, we need not reach Brown's arguments concerning it.

¶18    For her argument, Brown relies on three statements from the district court's oral ruling on the City's motion.[4] These are the first two of those statements: "[I]n this particular case . . . , the Court does not *find* that this was a condition that was created by the City" and "In summary there's just *not enough evidence* to conclude that this temporary icy condition was created by the City as opposed to natural occurrences." (Emphases added.) Brown highlights, as have we, that in these statements the court uses the word "find" and the phrase "not enough evidence."

¶19    However, a court's use of the word "find" (rather than "conclude") or the phrase "not enough evidence" (instead of "no evidence") is not alone determinative of whether the court's ruling is a finding of fact or a conclusion of law. *See, e.g., Zions First Nat'l Bank, NA v. National Am. Title Ins. Co.*, 749 P.2d 651, 656 (Utah 1988) ("The labels attached to findings of fact or conclusions of law are not determinative."). An ostensible "finding of fact that is actually a conclusion of law will be treated as a conclusion of law." *Id.* And this is as true for oral rulings as it is for written rulings.

¶20    Here, the district court's complete ruling on whether Brown presented evidence establishing a genuine dispute of material fact on the issue of whether the City created the dangerous condition was as follows:

> [I]n this particular case . . . , the Court does not find that this was a condition that was created by the City . . . .
>
> [Brown] claims that the ice was created by snow melting under the cars through the day and

---

4. The district court did not issue a separate written ruling, saying in its brief written order that it was "[relying] upon and incorporat[ing]" the "ruling [it made] in open court."

freezing at night, but of course the City did not create the snow, the City did not deposit the snow on the area or there's no evidence the City deposited snow on the area where [Brown] fell. Indeed, the testimony is that other cars could have placed snow or drug snow over already plowed areas.

The City didn't melt the snow or cause the water to refreeze even if that is what happened. There's no evidence of the actual plowing schedule here. There's no evidence that the black ice she slipped and fell on was actually created by the process she describes. There's no evidence that salting would have helped or harmed.

In summary there's just not enough evidence to conclude that this temporary icy condition was created by the City as opposed to natural occurrences.

¶21 In this ruling, the district court identified the evidence that Brown did not produce, it mentioned no evidence produced to contradict Brown's claim, and it did not weigh evidence. Accordingly, despite the court's use of the word "find" and the phrase "not enough evidence," its ruling did not constitute a factual finding based on a weighing of conflicting evidence. Rather, it was a legal conclusion that Brown did not produce evidence that the City created the dangerous condition.

¶22 The third statement Brown points to is this one containing the district court's ruling on her argument that the City had actual and constructive knowledge of the dangerous condition based on the email she sent to the City about two years before her fall:

Additionally, with regard to . . . the alleged notice that occurred . . . one or two years prior to the date in question of the fall, I do not *find* that that notice

was clear or specific enough to put the City on notice of how this person fell in this particular case.

(Emphasis added.)

¶23 Here again, although the court used the word "find" instead of "conclude," it was not weighing evidence or making a factual finding. In the sentence immediately preceding the identified sentence, the court demonstrated its cognizance of the summary judgment standard when it said of another of Brown's arguments that it was "holding that the plaintiff's claim here fails as a matter of law." And in the sentence immediately following the identified sentence, the court concluded that other evidence required "too much speculation on the part of the jury," again demonstrating its cognizance of the summary judgment standard. *See Hansen v. Harper Excavating, Inc.*, 2014 UT App 180, ¶ 9, 332 P.3d 969 (holding that on summary judgment a "trial court may rule as a matter of law" if there is no evidence to establish an element of the plaintiff's claim, "thus leaving [the issue] to jury speculation" (cleaned up)), *cert. denied*, 343 P.3d 708 (Utah 2015).

¶24 We do not believe that the district court momentarily lapsed into factfinding and a weighing of evidence in this last sentence Brown identifies. Instead, this sentence also plainly contains a legal conclusion—that Brown's email to the City about the condition of a sidewalk nearly two years before her fall was legally insufficient to create a genuine dispute of material fact on the issue of whether the City had actual or constructive knowledge of black ice in the parking lot almost two years later.

¶25 In sum, Brown invites us to elevate oral form over legal substance when characterizing a district court's rulings as factual findings or legal conclusions. We decline the invitation. The district court's use of "find" rather than "conclude" and "not enough evidence" rather than "no evidence" did not transform

the district court's plain legal conclusions into impermissible factual findings.[5]

## II. The District Court Correctly Concluded that Brown Did Not Present Evidence that the City Breached Its Duty of Care.

¶26 Having determined that the district court's summary judgment ruling was based on legal conclusions and not on impermissible factual findings, we now review those legal conclusions for correctness. *See Warrick v. Property Reserve Inc.*, 2018 UT App 197, ¶ 6, 437 P.3d 439.

¶27 A district court is required to grant summary judgment when a "moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). Of course, "the moving party always bears the burden of establishing the lack of a genuine issue of material fact." *Salo v. Tyler*, 2018 UT 7, ¶ 2, 417 P.3d 581. But "if [the nonmoving] party will bear the burden of production [of evidence] at trial," then "the burden of production of evidence . . . fall[s] on the nonmoving party" at the summary judgment stage as well. *Id.* "And where the burden of production falls on the nonmoving party, . . . the moving party may carry its burden of persuasion without putting on any evidence of its own—by showing that the nonmoving party has no evidence to support an essential element of a claim." *Id.*

---

5. It is nevertheless good practice, even in oral rulings, for district courts to be cognizant of word choice when making rulings, in order to head off unnecessary appellate wrangling. In the summary judgment context, for instance, "courts do not make factual findings," *Jones Waldo Holbrook & McDonough PC v. 3293 Harrison Blvd. LLC*, 2023 UT App 8, ¶ 16 n.6, 524 P.3d 1022, and should therefore generally avoid using the word "find" when announcing a summary judgment ruling.

¶28    In a premises liability case based on a temporary unsafe condition, such as this case, the plaintiff must prove at trial and, therefore, produce evidence on summary judgment "that the owner acted negligently either in creating or failing to remedy the temporary unsafe condition." *Jex v. JRA, Inc.*, 2008 UT 67, ¶ 26, 196 P.3d 576. When arguing that the owner negligently created a temporary dangerous condition, the plaintiff need not show that the owner had notice of the dangerous condition since "it is reasonable to presume that a party has notice of conditions that the party itself creates." *Goebel v. Salt Lake City S. R.R. Co.*, 2004 UT 80, ¶ 22, 104 P.3d 1185. But when arguing that the owner negligently failed to remedy a temporary unsafe condition, the plaintiff must produce evidence "that the [owner] had knowledge of the condition, that is, either actual knowledge, or constructive knowledge because the condition had existed long enough that the [owner] should have discovered it."[6] *Cochegrus v. Herriman City*, 2020 UT 14, ¶ 17, 462 P.3d 357 (cleaned up).

¶29    Like the district court, we conclude that Brown's negligence claim fails as a matter of law because she presented no evidence that (a) the City created the black ice on which she fell, (b) the City had actual knowledge of the black ice on which she fell, or (c) the City had constructive knowledge of the black ice on which she fell.

---

6. The plaintiff must also show that after the owner's receipt of actual or constructive knowledge of the dangerous condition, "sufficient time elapsed that in the exercise of reasonable care the [owner] should have remedied the dangerous condition." *Cochegrus v. Herriman City*, 2020 UT 14, ¶ 17, 462 P.3d 357. On appeal, Brown does not address this element of her negligent failure to remedy claim. Given our conclusions regarding the other elements of her claim, we need not address it either.

A.    Brown did not produce evidence that the City created the dangerous condition.

¶30    Brown asserts that she produced evidence that the City created the ice that caused her fall. She rightfully does not contend that the City brought about the winter weather conditions at play in the formation of the ice. Instead, she argues that the City created the ice by "plowing without salting"—thus creating, she contends, "a more dangerous condition than [if it had] simply . . . [not] plow[ed] at all." Accordingly, for her theory to be viable, Brown would have needed to produce evidence that under the then-prevailing conditions, plowing without salting would have yielded ice that likely would not have appeared if the City had refrained from plowing at all. She did not produce such evidence.

¶31    Brown testified that she had never seen salt in the parking lot and that "not having any salt applied . . . added risk to someone slipping and falling." But she did not testify that under the then-prevailing conditions (of which she also did not produce evidence), plowing without salting would have yielded ice that likely would not have appeared if the City had refrained from plowing. Neither did anyone else.[7] In fact, Brown's testimony was that "[t]he problem that created the icy conditions was [that] during the day *the* [*unplowed*] *snow* that was left under the vehicles would melt and then freeze overnight." (Emphasis added.) Thus, according to the only relevant evidence on record, it was a failure to plow that resulted in the ice, not plowing without salting.

---

7. Brown's counsel *argued* below that plowing without salting is more dangerous than not plowing at all, including by explaining how a Zamboni works. "[B]ut argument of counsel is not evidence." *State ex rel. Division of Forestry, Fire & State Lands v. Six Mile Ranch Co.*, 2006 UT App 104, ¶ 31 n.10, 132 P.3d 687.

B.      Brown did not produce evidence that the City had actual
        knowledge of the dangerous condition.

¶32     Brown asserts that she produced evidence that the
City "had actual knowledge of the dangerous conditions in
the parking lot." The only evidence she points to in support of
this assertion is her testimony about the email she sent to the
City nearly two years before her fall. Due to its timing,
however, that email could not have addressed the icy
conditions that existed on December 27, 2017. And Brown
testified that the email addressed only her concerns regarding the
condition of the sidewalk adjacent to the parking lot, not her
concerns regarding the lot itself. Because that email did not notify
the City of ice in the parking lot, let alone of ice in the parking lot
on or near December 27, 2017, and because her testimony about
the email is the only evidence Brown points to in support of her
argument that the City had actual knowledge of the dangerous
condition in the lot on the day she fell, she has failed to produce
evidence that the City had actual knowledge of the dangerous
condition.

C.      Brown did not produce evidence that the City had
        constructive knowledge of the dangerous condition.

¶33     Finally, Brown asserts that she produced evidence that the
City had constructive knowledge of the ice on which she fell. To
show that she produced evidence that the City had constructive
knowledge of that temporary unsafe condition, Brown "must
have shown that the unsafe condition existed long enough that
[the City] should have discovered it." *See Cochegrus v. Herriman
City*, 2020 UT 14, ¶ 24, 462 P.3d 357 (cleaned up). This "require[d]
evidence regarding the length of time the condition existed." *Id.*
¶ 25. "[A] mere hypothesis that the condition may have existed
for some unknown length of time does not suffice." *Id.* (cleaned
up). Although "a plaintiff is not required to prove the precise
length of time that an unsafe condition existed," she must produce

evidence that "the condition had been there for an appreciable time."[8] *Id.* ¶ 26 (cleaned up).

¶34　In some cases, "the nature of [the] unsafe condition may itself be evidence of its age." *Id.* ¶ 28. In this regard, "the nature of a durable, nontransitory unsafe condition . . . inherently suggests longevity." *Id.* On the other hand, "a transitory unsafe condition—such as a puddle of water or spilled food—will by nature do little to indicate the length of its existence." *Id.*

¶35　In *Cochegrus v. Herriman City*, 2020 UT 14, 462 P.3d 357, the plaintiff was injured when she tripped over a metal grounding rod that protruded a few inches from a city-owned parking strip. *Id.* ¶¶ 4–5. The plaintiff produced evidence that the rod extended ten feet into the ground and that it had been put there years before as part of the city's "streetlight infrastructure."[9] *Id.* ¶ 29. The court

---

8. "Whether the unsafe condition existed for an 'appreciable' amount of time implicates both the length of time it has endured and its noticeability." *Cochegrus v. Herriman City*, 2020 UT 14, ¶ 27, 462 P.3d 357. That is because a landowner may not have constructive knowledge of an unsafe condition that persists for an extended time but is not visible. *See id.* ¶ 31 ("A trip hazard in a field of naturally tall grass with few passersby must be distinguished from a rod that protrudes from regularly mowed grass in a residential area."). Because we conclude that Brown did not produce evidence of the length of time the black ice that caused her fall endured before she fell on it, we need not address whether she produced evidence of its noticeability.

9. Given the nature of the rod, the plaintiff argued on appeal that it was a permanent condition and that her claim should have been analyzed under the law applicable to permanent unsafe conditions. *Cochegrus v. Herriman City*, 2020 UT 14, ¶ 17, 462 P.3d 357. However, the plaintiff had not made that argument in the

(continued…)

held that "the durable, nontransitory nature of the grounding rod itself [was] enough to give rise to an inference that it existed for a substantial amount of time" and that this was "sufficient to create a dispute of fact regarding how long the unsafe condition existed." *Id.* ¶ 30.

¶36    The case *Warrick v. Property Reserve Inc.*, 2018 UT App 197, 437 P.3d 439, presents a contrast. There, a man was crossing a parking lot on a winter morning on his way to work when he "slipped and fell on a patch of ice." *Id.* ¶ 1. He and his wife sued the owner of the parking lot, asserting that the ice was caused by nearby piles of snow melting during the day and then freezing overnight. *Id.* ¶¶ 1, 20, 23. The plaintiffs produced no evidence of the temperatures on the days and nights preceding the man's fall and no evidence of how long it would have taken for the ice to form. *Id.* ¶ 23. The court held that the plaintiffs had provided no evidence demonstrating "approximately when the ice formed." *Id.* "For all the evidence show[ed], the ice could have been there for several days or it could have been there for several minutes." *Id.*

¶37    The plaintiffs argued that the evidence they had presented—of piles of previously plowed snow around the perimeter of the parking lot, of a skiff of snow in the parking lot, and of cleared and salted sidewalks near the parking lot, *id.* ¶ 3— "implie[d] [that] it took at least a day of melting and a night of freezing" for the ice on which the man fell to form and that "a long

---

trial court and, instead, had "conceded that 'the hazard . . . was, admittedly, a temporary condition.'" *Id.* ¶ 20. For that reason, the court held that the plaintiff had failed to preserve the argument that the rod was a permanent unsafe condition, and it analyzed her claim "under the framework applicable to a temporary unsafe condition." *Id.* ¶ 22.

winter's night is plenty of time for constructive notice to reasonably be found," *id.* ¶ 20 (cleaned up).

¶38     In response, the *Warrick* court acknowledged: "In slip-and-fall cases such as this, a factfinder will often be required to make reasonable inferences based on the evidence to decide whether a dangerous condition existed for an appreciable amount of time." *Id.* ¶ 21. But it emphasized that "a reasonable inference is a conclusion reached by considering other facts and deducing a logical consequence from them," *id.* (cleaned up), and "where conjecture and speculation are the only ways to determine the length of time [a dangerous condition was present], constructive notice should not be imputed," *id.* ¶ 22 (cleaned up). The court then held that without relevant evidence, "inferring that the ice existed for an appreciable time [would] require[] theorizing about matters over which there is no certain knowledge." *Id.* ¶ 25 (cleaned up). It then held that the *Warrick* plaintiffs' claim of constructive notice failed as a matter of law. *Id.*

¶39     Brown's case is distinguishable from *Cochegrus* and controlled by *Warrick*. The black ice on which Brown slipped and fell was not a durable, nontransitory condition like the protruding grounding rod in *Cochegrus*. Although Brown testified of a "constant issue" in the parking lot, that issue was a melt-and-freeze cycle that produced recurring but transitory ice, like the ice in *Warrick*.

¶40     And like the plaintiffs in *Warrick*, Brown has produced no evidence of the temperatures on the days and nights preceding her fall and no evidence of how long it would have taken for the ice that caused her fall to form. We explained in *Warrick* that without such evidence in a case like this, "inferring that the ice existed for an appreciable time [would] require[] theorizing about matters over which there is no certain knowledge." *Id.* (cleaned up). We then concluded "that the [*Warrick* plaintiffs had] presented no evidence going to the

amount of time the ice existed," and we held that their claim failed as a matter of law. *Id.*

¶41 Brown argues that reliance on *Warrick* here would be error because, she says, *Warrick* is at odds with the Utah Supreme Court's decision in *Cochegrus*. She points to the *Cochegrus* court's holding that "a plaintiff is not required to prove the precise length of time that an unsafe condition existed" and instead "must show only that the condition had been there for an appreciable time." 2020 UT 14, ¶ 26 (cleaned up). She then contends that *Warrick* "impl[ies] that certain knowledge of longevity is required to impute constructive notice," thus requiring a plaintiff to prove more than what is required under *Cochegrus*.

¶42 We disagree with Brown's characterization of *Warrick*. As noted above, the *Warrick* court recognized that "reasonable inferences" may be used to determine that a dangerous condition had "existed for an appreciable amount of time." 2018 UT App 197, ¶ 21. The *Warrick* plaintiffs' failure was not that they could not pin-point *exactly* or *with certainty* when the ice formed, but that they provided no evidence to indicate even "*approximately* when the ice formed." *Id.* ¶ 23 (emphasis added). It was the complete speculation that the lack of evidence in *Warrick* required that was problematic—a concept with which the *Cochegrus* court agreed, *see* 2020 UT 14, ¶ 25 ("In all cases, a mere hypothesis that the condition may have existed for some unknown length of time does not suffice. A plaintiff must offer some evidence of the length of time the condition had existed prior to the injury. It is not enough to rely on conjecture and speculation." (cleaned up)). We therefore see no conflict between *Cochegrus* and *Warrick*.

¶43 Nor do we agree with Brown that the district court mistakenly applied a higher standard than that set forth in *Cochegrus* and *Warrick* and granted summary judgment based on Brown's "inability to identify the precise moment when moisture in the parking lot turned into ice or to prove with certainty that

the Christmas Day snowstorm was the source of that moisture." To the contrary, the court explained, "I do agree that [Brown] is not required to prove the exact amount of time, for example, in this case that the ice formed, but there does have to be some evidence to give the jury a way to infer that there had been a length of time."

¶44   In the end, *Warrick* is controlling here. Brown has presented no evidence regarding the amount of time the ice she fell on existed before her fall. On the record before us, it might have preceded the storm on Christmas Day, or it might have formed moments before her arrival. Because Brown failed to provide evidence from which a jury could draw a reasonable inference that the ice had been in the parking lot for an appreciable amount of time, her claim fails as a matter of law.

CONCLUSION

¶45   We see no error in the district court's determination that Brown did not present evidence that the City created the dangerous condition that caused her fall, had actual knowledge of the dangerous condition that caused her fall, or had constructive knowledge of the dangerous condition that caused her fall. We therefore affirm the district court's grant of summary judgment in favor of the City.

———————